**Raul G. OVALLE, Administrator of the Estate of Roberto Ovalle, Sr., Deceased, Appellant,**

v.

**Anita OVALLE et al., Appellees.**

**No. 6158.**

Court of Civil Appeals of Texas, Waco.

Aug. 14, 1980.

Rehearing Denied Sept. 11, 1980.

M. N. Garcia, Garcia & Ganne, Austin, for appellant.

Frank N. Ikard, Jr., Mary Joe Carroll, and Anne S. Wynne, Clark, Thomas, Winters & Shapiro, J. Travis Blakeslee, Minton, Burton & Fitzgerald, Austin, for appellees.

## OPINION

McDONALD, Chief Justice.

This is an appeal by the Administrator of the Estate of Roberto Ovalle, Sr. from final order of the Probate Court awarding Anita Ovalle (widow of Roberto): 1) $4500.00 family allowance; 2) $500.00 allowance in lieu of exempt property; 3) furniture, fixtures, tools, personalty, two automobiles; and 4) right of occupancy of the homestead.

Roberto Ovalle, Sr. died on December 31, 1977 leaving five children and a wife, not the mother of his children. His brother Raul G. Ovalle (Appellant) was appointed Administrator of his Estate. His widow Anita (Appellee) made application to the probate court for 1) family allowance; 2) exempt property allowance; and 3) furniture, automobile, personalty and use of the parties' homestead.

The Administrator and deceased's children opposed such applications alleging: 1) Anita intentionally killed the decedent; and 2) that because of Anita's action in wrongfully bringing about the death of decedent she should not be allowed to collect any proceeds from his estate.

Applications were also made for family allowance and exempt property allowance on behalf of Roberto Ovalle, Jr., minor child of the deceased.

Trial was to the court which rendered final order decreeing: Anita Ovalle recover 1) $4500.00 family allowance; 2) $500.00 allowance in lieu of exempt property; 3) exempt personal property (furniture, fixtures, tools, two automobiles); and 4) right of occupancy of the homestead.

Such order further decreed a family allowance of $2500.00 and a $500.00 exempt property allowance, to the minor child Roberto, Jr.

The trial court filed Findings of Fact finding among other matters that "In causing the death of her husband, Anita Ovalle was justified in using deadly force against her husband, because she reasonably believed that such force was immediately necessary to protect herself against the use by Roberto Ovalle of unlawful force".

Appellant appeals on 5 points which we summarize as 2 main contentions:

"1) The trial court erred in finding that appellee was justified in using deadly force against her husband because such finding is against the great weight and preponderance of the evidence.

"2) The trial court erred in concluding as matters of law that appellee should be awarded statutory allowances and rights from her husband's estate, because she intentionally killed her husband without justification".

There are fundamental maxims of the common law which say: "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are adopted by public policy, and have their foundation in universal law administered in all civilized countries". *Box v. Lanier*, 112 Tenn. 393, 79 S.W. 1042; *In re Estate of Laspy*, Mo.App., 409 S.W.2d 725.

*Laspy*, supra holds that one may qualify as a widow within the purview of statute authorizing payment of widow's allowance from the estate of deceased only if she has been reduced to widowhood by the ordinary and usual vicissitudes of life and not by her own felonious act which created that condition; and further that a wife who feloniously kills her husband will not be permitted to take from his estate property and allowances provided by statute for surviving widows.

Texas courts hold that the law imposes a constructive trust upon property of a deceased which passed either by inheritance or by will if the beneficiary wilfully and wrongfully caused the death of the deceased; and further that the legislative intent behind VATS Probate Code, Sec. 41(d) requires outright forfeiture of all inheritance and benefits in the case of a convicted killer. *Bounds v. Caudle*, (Tex.), 560 S.W.2d 925.

■ Appellee was indicted for murder of her husband, but convicted of voluntary manslaughter, sentenced to 10 years probation as a result of plea bargaining. The judgment in a criminal case is not binding upon the court in a civil proceeding; and this rule is particularly applicable where the conviction is based upon plea bargaining. *Bounds v. Caudle*, supra.

Thus, the primary issue in this case is whether the trial court's finding that Anita Ovalle was justified in using deadly force against her husband is against the great weight and preponderance of the evidence.

Appellee was 41 years old, had attended high school, business college and Austin Community College and was employed by the City of Austin in a secretarial position. The deceased was 45 years old, an Air Force retiree, and was with the Austin Police Department assigned as a security guard at Brackenridge Hospital. Appellee and deceased were married on April 14, 1975, but had lived together since 1961. Appellee was previously married and has a grown son; the deceased was previously married and has 5 children including a minor son.

On December 31, 1971 deceased got off work at 3:30 P.M. and arrived home at approximately 4 P.M. Appellee put the deceased's gun away in the drawer of a night stand; then went outside and helped deceased wash the cars; watched TV; ate supper about 6:30 P.M.; deceased had several drinks during the period from 4 P.M. to 8 P.M. About 8 P.M. appellee and deceased fussed about "the possibility of him having another woman live in our house and also the possibility of him dating other women"; "I tried to talk him out of the way he was, you know, saying you know, that he wanted to do such things. And I kept on telling him that that wasn't right"; about 8:30 P.M. a telephone inquiry came with regard to whether appellee and deceased were going to visit his family that night; there was friction at this point as to whether they would visit deceased's family or go to the NCO Club; deceased left the TV room to get a drink; appellee followed him; deceased told appellee to "leave me alone"; deceased then went into the bathroom and shut the door; appellee pushed the door open, stuck her foot in the door; deceased shoved appellee; slammed the door on her

face; appellee scratched deceased; deceased went back in the bathroom, came back out and said to appellee "You should never have done that, you are going to regret it"; deceased went back in the bathroom; came out and said to appellee "I'm sorry"; deceased went back in the bathroom; appellee went to the master bedroom and got the pistol and stood in the doorway with it holding it with both hands; deceased came out of the bathroom coming toward appellee down the hall; appellee fired the gun four times into deceased's head, chest and abdomen; appellee remembers the first shot only; she testified she was in fear of her life or serious bodily harm at that point; that she was "scared to death"; that after that she called the police; in the past deceased had beaten up appellee but she never reported same to anyone or went to a doctor; deceased was intoxicated; only deceased and appellee were present; thereafter that night appellee gave a statement to the police in which she admitted shooting deceased.

Section 9.31 Self Defense Vernon's Texas Penal Code provides in pertinent part:

"(a) Except as provided in Subsection (b) of this section, a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

"(b) The use of force against another is not justified:

(1) In response to verbal provocation alone;

(2) * * *

(3) * * *

(4) If the actor provoked the other's use or attempted use of unlawful force, unless:

(A) The actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and

(B) the other nevertheless continues or attempts to use unlawful force against the actor.

"(c) * * *

"(d) The use of deadly force is not justified under this subchapter except as provided in Sections 9.32, * * * ".

Section 9.32 Deadly Force in Defense of Person provides in pertinent part:

"A person is justified in using deadly force against another:

"(1) if he would be justified in using force against the other under Section 9.31 of this code;

"(2) if a reasonable person in the actor's situation would not have retreated; and

"(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

(A) to protect himself against the other's use or attempted use of unlawful deadly force; or

(B) to prevent the other's imminent commission of * * * murder * * * ".

█ If deceased's actions amounted to unlawful force or threat of unlawful force, he afterwards said he was sorry; it was thereafter appellee got the gun and stood in the doorway of the bedroom; appellee had more than adequate time to have left the house and retreated; and appellee fired four shots into deceased–anyone of which shots the pathologist medical examiner of Travis County testified would have been fatal.

We think that from the evidence as a whole the trial court's finding that appellee was justified in using deadly force against her husband because she reasonably believed that such force was immediately necessary to protect herself against the use by her husband of unlawful force, is against the great weight and preponderance of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660.

Appellant's contention 1 is sustained.

No appeal was taken from that portion of the judgment awarding benefits to the minor child. Such portion of the judgment is

severed and affirmed; and that portion of the judgment awarding benefits to appellee is reversed and remanded for a new trial.

AFFIRMED IN PART: REVERSED & REMANDED IN PART.