AETNA CASUALTY AND SURETY COMPANY vs. JOSEPH
NIZIOLEK & another.[1]

Hampden. May 7, 1985. — August 22, 1985.

Present: WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Collateral Estoppel. Evidence,* Admissions and confessions, Guilty plea.

A defendant convicted of a criminal offense after trial is precluded in a subsequent civil action from relitigating issues decided in the criminal case. [740-744]

Where the judge at the trial of an action by an insurer seeking to recover money paid to its insured under a fire insurance policy had excluded evidence that the insured had been convicted of causing insured property to be burned and, with the acquiescence of the insured, had delayed until after trial consideration of the question whether the insured's conviction precluded him from relitigating issues decided in the criminal case, and where the insured had had a full and fair opportunity to litigate in the criminal case, it was held that the insured's conviction for causing the burning of insured property required judgment for the insurer. [744-747]

A criminal conviction following a plea of guilty has no preclusive effect in subsequent civil litigation, although the guilty plea and any other admissions made during the plea-taking colloquy are admissible as evidence. [747-750]

CIVIL ACTION commenced in the Superior Court Department on May 16, 1979.

The case was tried before *John F. Moriarty,* J., and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Nancy Frankel Pelletier* for the plaintiff.

*Arthur Leavens* for Joseph Niziolek.

O'CONNOR, J. In this action, brought by Aetna Casualty and Surety Company (Aetna) against Joseph Niziolek and Ray-

---

[1] Raymond Bednarz. Bednarz neither argued orally before this court nor submitted a brief.

mond Bednarz to recover money paid by Aetna to Niziolek on a fire insurance policy on a house owned by Niziolek, we hold that: (1) Aetna may invoke the doctrine of collateral estoppel to preclude Niziolek from relitigating issues decided in the criminal trial in which he was convicted of burning the insured property, and (2) Bednarz's convictions of arson and of conspiracy to commit arson, entered after he pleaded guilty, have no preclusive effect in subsequent civil litigation, but they are admissible in evidence against Bednarz as admissions.

Joseph Niziolek owned a three-family house located at 59-61 Sorrento Street in Springfield. The house was insured by Aetna. In November, 1976, a fire occurred at the house, as a result of which, in January, 1977, Aetna paid Niziolek $28,733.85.

In June, 1978, Niziolek was indicted for arson, for conspiracy to commit arson, for burning insured property in violation of G. L. c. 266, § 10 (1984 ed.),[2] and for larceny. All the indictments arose out of the fire at Niziolek's house. In February, 1979, after a jury trial, Niziolek was convicted of arson, of burning insured property, and of four charges of larceny. On appeal, this court reversed Niziolek's arson conviction and affirmed the other judgments. *Commonwealth* v. *Niziolek*, 380 Mass. 513, 532 (1980). The indictment charging Niziolek with conspiracy to commit arson was dismissed on the Commonwealth's motion in 1983.

On the same day that Niziolek was indicted, Raymond Bednarz, the second defendant in this case, was indicted for arson and for conspiracy to commit arson. Those indictments also arose out of the fire at Niziolek's house. Bednarz pleaded guilty to both indictments against him and was given a suspended sentence, placed on probation for three years, and ordered to pay a $7,500 fine.

---

[2] Section 10 provides: "Whoever, wilfully and with intent to defraud or injure the insurer, sets fire to, or attempts to set fire to, or whoever causes to be burned, or whoever aids, counsels or procures the burning of, a building, or any goods, wares, merchandise or other chattels, belonging to himself or another, and which are at the time insured against loss or damage by fire, shall be punished by imprisonment in the state prison for not more than five years or in a jail or house of correction for not more than two and one half years."

In March, 1979, Aetna filed this action against Niziolek and Bednarz. Aetna's complaint alleged that both Niziolek and Bednarz "caused the building at 59-61 Sorrento Street . . . to be burned," that Niziolek "wrongfully and fraudulently obtained" $28,733.85 from Aetna, and that Bednarz "wrongfully and fraudulently caused [Aetna] to be damaged by" that amount. Aetna seeks recovery from both Niziolek and Bednarz of the money that it paid Niziolek.

When the case came forward for trial, Niziolek filed a motion in limine asking the judge to bar Aetna from using the records of his convictions to impeach his credibility. The judge ruled that, if the convictions relating to the fire at Niziolek's house were otherwise inadmissible, he would exclude their use for impeachment purposes, and the judge asked the parties to brief the issue whether Niziolek's convictions precluded him from relitigating whether he had intentionally caused the house to be burned. After considering the parties' briefs, the judge decided to exclude any evidence of Niziolek's convictions and to reserve judgment on the preclusion issue, with the understanding that, if the jury returned a verdict for Niziolek, Aetna could raise the issue on a motion for judgment notwithstanding the verdict. Neither Aetna nor Niziolek objected to that procedure.

The only contested issue of fact at the trial was whether Niziolek, Bednarz, or both, had intentionally caused Niziolek's house to be burned. Both Niziolek and Bednarz testified. Bednarz testified that he had introduced Niziolek to Melvin Davis, and that, after the fire, he had seen Niziolek pay Davis a sum of money. Bednarz admitted that he had accepted money from Niziolek in exchange for his promise to keep quiet about the Niziolek-Davis transaction, but he denied any further involvement with the fire. Aetna introduced Bednarz's guilty pleas against him as admissions, and Bednarz testified that he had pleaded guilty only because his attorney had negotiated a favorable plea bargain.

Niziolek denied any responsibility for the fire. He testified that Bednarz and Davis had implicated him because he refused to succumb to their extortion attempts. No evidence of Niziolek's convictions was introduced.

Davis — the Commonwealth's main witness at Niziolek's criminal trial — did not testify because Aetna could not locate him to serve him with a subpoena.

The jury returned verdicts for Niziolek and for Bednarz, and Aetna filed motions for judgment notwithstanding the verdicts and for a new trial. Without ruling on the motions, the judge reported the following questions to the Appeals Court:

"(1) Is the defendant, Joseph Niziolek, by reason of his prior conviction of burning the building at 59-61 Sorrento Street with the intent to defraud or injure the insurer, precluded from retrying the issue as to whether he intentionally caused the building to be burned?; and

"(2) Is the defendant, Raymond Bednarz, by reason of his prior pleas of guilty of arson and of burning the building at 59-61 Sorrento Street with the intent to defraud or injure the insurer, precluded from retrying the issue as to whether he intentionally caused the building to be burned?"[3] We granted Aetna's application for direct appellate review.

1. *Preclusive effect of a conviction, obtained after a trial, in subsequent civil litigation.* "By the traditional rule, a defendant convicted of [a] crime is entitled to retry the question whether he actually committed the crime, when that issue arises in a civil proceeding to which the Commonwealth is not a party; and the criminal judgment is not even evidence against him on the merits of the case." *Minasian* v. *Aetna Life Ins. Co.*, 295 Mass. 1, 3 (1936). In *Silva* v. *Silva*, 297 Mass. 217, 218 (1937), this court stated that the traditional rule "must be deemed to be law in this jurisdiction." In 1975, in *Matter of Hiss*, 368 Mass. 447, 450 (1975), by distinguishing rather than overruling *Silva* v. *Silva, supra*, we implicitly announced our continued adherence to the traditional rule. Aetna now urges us to reconsider our position and to abandon the traditional rule.

---

[3] We note that, although reported question number two states that Bednarz pleaded guilty to burning the building at 59-61 Sorrento Street with the intent to defraud or injure the insurer, the judge's report and the parties' briefs indicate that Bednarz pleaded guilty to indictments charging arson and conspiracy to commit arson. We will proceed under the assumption that Bednarz pleaded guilty to arson and conspiracy to commit arson.

One of the main reasons for the emergence of the traditional rule was the doctrine of mutuality of estoppel. See Vestal & Coughenour, Preclusion/Res Judicata Variables: Criminal Prosecutions, 19 Vand. L. Rev. 683, 704 (1966). Under that doctrine, "persons not parties or in privity with parties to an action are not affected by a judgment in that action — . . . where strangers are not bound by a judgment its benefit is not available to them." *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 452 (1968). See *Blonder-Tongue Laboratories, Inc.* v. *University of Ill. Found.*, 402 U.S. 313, 320-321 (1971); *Bernhard* v. *Bank of Am. Nat'l Trust & Sav. Ass'n*, 19 Cal. 2d 807, 811-812 (1942). In *Silva* v. *Silva, supra*, this court based its decision to adhere to the traditional rule on the absence of mutuality. "Here there could have been no mutuality," we stated, "for nothing decided in criminal proceedings brought against the libellant could have bound the libellee, who was not a party to them . . . ." *Id.* at 218.

Since the time that this court decided *Silva* v. *Silva, supra*, the doctrine of mutuality of estoppel has become virtually a "dead letter." *B.R. DeWitt, Inc.* v. *Hall*, 19 N.Y.2d 141, 147 (1967). In the leading case of *Bernhard* v. *Bank of Am. Nat'l Trust & Sav. Ass'n, supra*, the Supreme Court of California abandoned the doctrine, stating: "No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend." *Id.* at 812. In 1968, quoting that language, this court abandoned the doctrine of mutuality. *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Marine Ins. Co., supra* at 455. As the United States Supreme Court has noted, "the abrogation of mutuality has been accompanied by other developments — such as . . . expansion of the preclusive effects afforded criminal judgments in civil litigation — which enhance the capabilities of the courts to deal with some issues swiftly but fairly." *Blonder-Tongue Laboratories, Inc.* v. *University of Ill. Found., supra* at 327. In light of our abandonment of the doc-

trine of mutuality, we consider it appropriate also to discontinue our adherence to the traditional rule.

Collateral estoppel — more graphically known as "issue preclusion" — and the related doctrine of res judicata — "claim preclusion" — "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen* v. *McCurry*, 449 U.S. 90, 94 (1980). In the context we face here — a civil action following a criminal prosecution — application of issue preclusion will not relieve parties of the cost and vexation of multiple lawsuits, but it will conserve scarce judicial resources, prevent people from profiting from their criminal conduct, and, perhaps most importantly, prevent the diminution of public confidence in our judicial system that would result if civil juries repeatedly found by a preponderance of the evidence that a convicted criminal defendant had not done something that a criminal jury had found beyond a reasonable doubt that he had done.

We hold, therefore, that a party to a civil action against a former criminal defendant may invoke the doctrine of collateral estoppel to preclude the criminal defendant from relitigating an issue decided in the criminal prosecution. We note that the Restatement (Second) of Judgments has also adopted that position. Restatement (Second) of Judgments § 85(2) (1982).[4]

---

[4] Section 85 states in pertinent part: "With respect to issues determined in a criminal prosecution: . . . (2) A judgment in favor of the prosecuting authority is preclusive in favor of a third person in a civil action: (a) Against the defendant in the criminal prosecution as stated in § 29 . . . ." Illustrations 7 and 8 to § 85 state: "7. D is convicted of arson of a building. D then brings an action against I, an insurer which wrote a fire insurance policy on the building, seeking to recover on the policy. The policy has an exclusion of liability for losses caused by intentional act of the insured. The determination in the criminal prosecution that D deliberately set the fire is conclusive in favor of I in the subsequent civil action. 8. Same facts as Illustration 7. P is the owner of a building adjacent to D's building. P's building was severely damaged as the result of spread of the fire from D's building. In a civil action by P against D to recover for damage to P's building, the determination in the criminal prosecution that D deliberately set the fire is conclusive in favor of P."

We find substantial support in the case law for the position that we adopt. Although it is true, as Niziolek points out in his brief, that some courts adhere to the traditional rule,[5] many more have abandoned that rule. Courts in at least nine States, and in the District of Columbia, have held that a party to a civil action may invoke collateral estoppel to preclude a former criminal defendant from relitigating in the civil action issues decided against the criminal defendant in the criminal prosecution. See *Scott* v. *Robertson,* 583 P.2d 188, 191-192 (Alaska 1978); *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co.,* 58 Cal. 2d 601, 606-607 (1962), cert. denied, 372 U.S. 966 (1963); *Ross* v. *Lawson,* 395 A.2d 54, 57 (D.C. 1978); *Hanover Ins. Co.* v. *Hayward,* 464 A.2d 156, 160 (Me. 1983); *Travelers Ins. Co.* v. *Thompson,* 281 Minn. 547, 555 (1968); *Aetna Life & Casualty Ins. Co.* v. *Johnson,* 673 P.2d 1277, 1280 (Mont. 1984); *S.T. Grand, Inc.* v. *City of New York,* 32 N.Y.2d 300, 305 (1973); *Casey* v. *Northwestern Sec. Ins. Co.,* 260 Or. 485, 492 (1971); *Hurtt* v. *Stirone,* 416 Pa. 493, 499, cert. denied, 381 U.S. 925 (1965); *Seattle-First Nat' l Bank* v. *Cannon,* 26 Wash. App. 922, 928-929 (1980). See also, as to the Federal courts, *Cardillo* v. *Zyla,* 486 F.2d 473, 475-476 (1st Cir. 1973); *Compton* v. *Ide,* 732 F.2d 1429, 1434 (9th Cir. 1984); *Wolfson* v. *Baker,* 623 F.2d 1074, 1077-1081 (5th Cir. 1980), cert. denied, 450 U.S. 966 (1981). Furthermore, at least three other State courts, while not holding that all criminal convictions after trial have preclusive effect in subsequent civil litigation, have held that a party may invoke the doctrine of collateral estoppel to preclude a convicted defendant from

---

[5] Niziolek cites *Ovalle* v. *Ovalle,* 604 S.W.2d 526, 528 (Tex. Civ. App. 1980); *Keating* v. *Department of Natural Resources,* 140 Ga. App. 796, 798 (1976), aff'd, 238 Ga. 605 (1977); *Rullo* v. *Rullo,* 121 N.H. 299, 300 (1981); and *Aetna Casualty & Sur. Co.* v. *Kuhl,* 296 Md. 446, 452 (1982). We note that the first of those cases involves a criminal conviction after a plea bargain, and the latter two of those cases involve attempts to use a criminal conviction to preclude a person other than the criminal defendant from litigating an issue allegedly decided in the criminal prosecution. Those fact patterns involve different considerations from those involved here. See part 2 of this opinion, *infra*; *Massachusetts Property Ins. Underwriting Ass'n* v. *Norrington, post* 751 (1985).

bringing a suit attempting to benefit from his own wrong. See *Imperial Kosher Catering, Inc.* v. *Travelers Indem. Co.*, 73 Mich. App. 543, 545 (1977); *Morin* v. *Aetna Casualty & Sur. Co.*, 478 A.2d 964, 966-967 (R.I. 1984); *Eagle, Star & British Dominions Ins. Co.* v. *Heller*, 149 Va. 82, 111-112 (1927). At least one court has held that that rationale also applies in a suit brought by a crime victim's subrogee against a convicted criminal to recoup the money stolen. *Hardin* v. *Aetna Casualty & Sur. Co.*, 384 F.2d 718, 719 (5th Cir. 1967), cert. denied, 391 U.S. 971 (1968). Courts in at least four other States have abandoned the traditional rule and have held the criminal determination admissible but not conclusive in subsequent civil litigation. See *Sovereign Camp W.O.W.* v. *Gunn*, 227 Ala. 400, 402-403 (1933); *Asato* v. *Furtado*, 52 Hawaii 284, 290 (1970); *Thornton* v. *Paul*, 74 Ill. 2d 132, 151 (1978); *Harlow* v. *Dick*, 245 S.W.2d 616, 618 (Ky. Ct. App. 1952). See also *Hudson* v. *Otero*, 80 N.M. 668, 670 (1969) (criminal conviction admissible but not conclusive in subsequent civil litigation only if criminal defendant seeks to take advantage of rights arising from the crime).

Niziolek argues that this court's decision in *Albernaz* v. *Fall River*, 346 Mass. 336 (1963), bars the application of collateral estoppel in cases like this one. In *Albernaz*, we said that "rarely, if ever, has a court allowed a stranger to the first action to use a judgment offensively, as distinguished from defensively, against a party who did not initiate the prior litigation. . . . Judicial reluctance in allowing strangers to so use an earlier judgment is based on principles of fairness." (Citations omitted.) *Id.* at 339-340. We stated, as an illustrative example, that the defendant in the first action, against whom a judgment is sought to be used offensively in a second action, may have forgone its right of appeal in the first action solely on the basis of cost and inconvenience. *Id.* at 340. In appropriate circumstances, however, the offensive use of collateral estoppel is a generally accepted practice in American courts. In *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 331 (1979), the United States Supreme Court authorized the offensive use of collateral estoppel in the Federal courts. In cases like this one, involving

former criminal defendants, many courts have authorized the offensive use of collateral estoppel. See *Hardin* v. *Aetna Casualty & Sur. Co., supra; Ross* v. *Lawson, supra; Hanover Ins. Co.* v. *Hayward, supra; Travelers Ins. Co.* v. *Thompson, supra; Aetna Life & Casualty Ins. Co.* v. *Johnson, supra; Read* v. *Sacco,* 49 A.D.2d 471, 472 (N.Y. 1975); *Roshak* v. *Leathers,* 277 Or. 207, 210 (1977); *Hurtt* v. *Stirone, supra; Seattle-First Nat'l Bank* v. *Cannon, supra.* See also Restatement (Second) of Judgments § 85 illustration 8 (1982). Fairness is the decisive consideration. We see no unfairness in authorizing the offensive use of collateral estoppel in cases like this one. Aetna could not have joined the criminal prosecution against Niziolek, so Aetna cannot properly be charged with sitting back and avoiding the costs of participation in on-going litigation, and then reaping a benefit from the resulting judgment. See *Parklane Hosiery Co.* v. *Shore, supra* at 330. Furthermore, in light of the criminal sanctions that he faced, Niziolek had every incentive to defend the prosecution vigorously, see *id.,* and to take an appeal, which he did. Compare *Albernaz* v. *Fall River, supra* at 340. There is no reason why Aetna should be able to use the conviction of its insured defensively in an action against it to collect money on an insurance policy, but be unable to use the conviction offensively in its action to recover money that it has already paid out to the convicted insured.

Niziolek argues that, for two reasons, even if we adopt the rule of collateral estoppel that we adopt today, we should not apply it against him. He argues that in this case the parties have already completed the civil litigation and the jury has returned its verdict in his favor, and that, therefore, the application of collateral estoppel will save no judicial resources and will involve only an unprincipled choice of one jury's verdict over another's. We reject that argument. In his report, the trial judge wrote that, before trial, he told the parties that he would refrain from making an immediate ruling on the collateral estoppel issue if the parties would stipulate that Niziolek had been convicted of burning the house and that Aetna had paid him $28,733.85 as a result of that fire. The judge wrote,

further, that the parties made that stipulation "with the understanding that if the jury returned a verdict in favor of Niziolek, the question of issue preclusion would then be further argued on a motion for judgment n.o.v." We will not permit Niziolek, who acquiesced in the judge's decision to delay his ruling until after the trial, now to argue that collateral estoppel does not apply because the trial has already taken place. The rule that we announce today will not, as Niziolek argued orally, allow parties in Aetna's position to litigate the civil action and then, if faced with an adverse jury verdict, assert collateral estoppel. Unless the collateral estoppel issue is raised before litigation, the issue will be waived.

Niziolek also argues that we should not apply collateral estoppel against him because, during his criminal trial, he did not have a full and fair opportunity to litigate. He argues that the criminal discovery rules, see Mass. R. Crim. P. 14, 378 Mass. 874 (1979), restricted his opportunity to prepare his case, and that during the criminal prosecution the prosecutor unfairly influenced the outcome of the trial by making an agreement with Melvin Davis that the Commonwealth would drop certain criminal charges then pending against Davis in return for Davis's testimony.

We find no merit in that argument. Niziolek points to no information, material or otherwise, that the criminal rules prevented him from discovering but that he could have discovered under the civil rules, and he had full opportunity to challenge Davis's testimony at trial and on appeal from his conviction. Fairness does not require that Niziolek be permitted to retry the question whether he intentionally burned his property.

Niziolek was convicted of burning insured property in violation of G. L. c. 266, § 10. At Niziolek's criminal trial, the trial judge correctly charged the jury that "[t]he elements of [the crime of burning insured property] which the Commonwealth must prove beyond a reasonable doubt to your satisfaction are one, that the defendant caused the property to be burned, two, that the property was insured, [and] three, that the defendant had the intent to injure or defraud the insurer . . . ." *Commonwealth* v. *Niziolek*, 380 Mass. 513, 528 n.5

(1980). See G. L. c. 266, § 10; *Commonwealth* v. *Cooper*, 264 Mass. 368, 371-372 (1928). The jury's guilty verdict established conclusively against Niziolek that, with the intent to injure or defraud Aetna, Niziolek caused his house to be burned. An insurer "is not liable for a fraudulent loss, due to the intentional destruction of property by the insured." *Todd* v. *Traders & Mechanics Ins. Co.*, 230 Mass. 595, 599 (1918). Niziolek's conviction for burning insured property requires a judgment for Aetna in this case.

2. *Preclusive effect of a guilty plea in subsequent civil litigation.* In *Morrissey* v. *Powell*, 304 Mass. 268, 269 (1939), this court stated: "A plea of 'guilty' is an admission of the material facts alleged in the complaint or indictment, . . . and in so far as it amounts to an admission of facts material in the trial of a civil case in which the person so pleading is a party, it is admissible as evidence against him. *Dzura* v. *Phillips*, 275 Mass. 283, 289, 290 [1931]. See *Blackman* v. *Coffin*, 300 Mass. 432, 437 [1938]. But such a plea, even when followed by a conviction, is not necessarily conclusive as to the facts admitted, and the record of a conviction based upon a plea of guilty is received 'not as a judicial act, having the force and effect of a judgment, but as a solemn confession of the very matter charged in the civil action.' *Mead* v. *Boston*, 3 Cush. 404, 407 [1849]. The plea may be explained and reasons shown for entering it. *Buxton* v. *Somerset Potters' Works*, 121 Mass. 446 [,448 (1877)]. *Minasian* v. *Aetna Life Ins. Co.*, 295 Mass. 1, 3 [1936], and cases cited." Aetna urges us to reconsider that position and to give a conviction following a guilty plea preclusive, as compared with evidentiary, effect in subsequent civil litigation. We decide to adhere to the position set out in *Morrissey* v. *Powell, supra.* We note that courts in at least thirty-nine other States join us in taking the position that a plea of guilty is admissible in evidence as an admission in subsequent civil litigation, but is not conclusive.[6]

---

[6] See *Aetna Life Ins. Co.* v. *Dowdle*, 287 Ala. 201, 212 (1971); *Monsma* v. *Williams*, 385 P.2d 107, 110-111 (Alaska 1963); *Kelch* v. *Courson*, 103 Ariz. 576, 579 (1968); *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co.*, 58

Collateral estoppel "can be used only to prevent 'relitigation of issues actually litigated' in a prior lawsuit." *Nevada* v. *United States*, 463 U.S. 110, 130 n.11 (1983), quoting from *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 326 n.5 (1979). See also *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 455 (1968) (findings may provide basis for collateral estoppel only if "the product of full litigation and careful decision"). When a conviction is entered after a plea of guilty, "no issue [is] 'actually litigated' . . . since [the defendant] decline[s] to contest his guilt in any way." *Haring* v. *Prosise*, 462 U.S. 306, 316 (1983). Therefore, the doctrine of collateral estoppel does not apply to preclude the former criminal defendant from litigating in subsequent civil litigation issues involved in the criminal proceeding in which he pleaded guilty. See Restatement (Second) of Judgments § 85 comment b (1982); 1B Moore's Federal

Cal. 2d 601, 605 (1962), cert. denied, 372 U.S. 966 (1963); *Jacobs* v. *Goodspeed*, 180 Conn. 415, 418-419 (1980); *Nunez* v. *Gonzalez*, 456 So. 2d 1336, 1338 (Fla. Dist. Ct. App. 1984); *Thompson* v. *Hill*, 143 Ga. App. 272, 275 (1977); *Koch* v. *Elkins*, 71 Idaho 50, 54 (1950); *Abraham Lincoln Memorial Hosp. Corp.* v. *Gordon*, 111 Ill. App. 2d 179, 183-184 (1969); *Dimmick* v. *Follis*, 123 Ind. App. 701, 704-705 (1953); *Scogin* v. *Nugen*, 204 Kan. 568, 572 (1970); *Race* v. *Chappell*, 304 Ky. 788, 792 (1947); *Hutchins* v. *Westley*, 235 So. 2d 434, 436 (La. Ct. App. 1970); *MacDonald* v. *Hall*, 244 A.2d 809, 811 (Me. 1968); *Brohawn* v. *Transamerica Ins. Co.*, 276 Md. 396, 403 (1975); *Jankowski* v. *Clausen*, 167 Minn. 437, 440 (1926); *Seals* v. *St. Regis Paper Co.*, 236 So. 2d 388, 392 (Miss. 1970); *Pruiett* v. *Wilform*, 477 S.W.2d 76, 80 (Mo. 1972); *Sikora* v. *Sikora*, 160 Mont. 27, 33 (1972); *Schaefer* v. *McCreary*, 216 Neb. 739, 745-746 (1984); *Public Serv. Co.* v. *Chancey*, 94 N.H. 259, 260-261 (1947); *Svejcara* v. *Whitman*, 82 N.M. 739, 740 (Ct. App. 1971); *Grant* v. *Shadrick*, 260 N.C. 674, 675 (1963); *Dahlen* v. *Landis*, 314 N.W.2d 63, 72 (N.D. 1981); *Wilcox* v. *Gregory*, 112 Ohio App. 516, 518 (1960); *Dover* v. *Smith*, 385 P.2d 287, 289 (Okla. 1963); *Hazard* v. *Salles*, 222 Or. 559, 562 (1960); *Cromley* v. *Gardner*, 253 Pa. Super. 467, 473 (1978); *Ludwig* v. *Kowal*, 419 A.2d 297, 303 (R.I. 1980); *Samuel* v. *Mouzon*, 282 S.C. 616, 619-620 (Ct. App. 1984); *Berlin* v. *Berens*, 76 S.D. 429, 436 (1956); *Grange Mut. Casualty Co.* v. *Walker*, 652 S.W.2d 908, 910 (Tenn. Ct. App. 1983); *Lucas* v. *Burrows*, 499 S.W.2d 212, 214 (Texas Civ. App. 1973); *Dixon* v. *Stewart*, 658 P.2d 591, 599-601 (Utah 1982); *Russ* v. *Good*, 92 Vt. 202, 205 (1917); *Bagley* v. *Weaver*, 211 Va. 779, 781 (1971); *Ryan* v. *Westgard*, 12 Wash. App. 500, 510-511 (1975); *Moore* v. *Skyline Cab, Inc.*, 134 W. Va. 121, 132 (1950); *Haley* v. *Dreesen*, 532 P.2d 399, 403 (Wyo. 1975).

Practice par. 0.418 [1] (2d ed. 1984); 18 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 4474 (1981).

"Although, when a plea of guilty is accepted the issues are not technically litigated," Aetna concedes in its brief, "the trial court is nevertheless constrained to conduct a hearing to determine the voluntariness of the plea as well as a factual basis therefor." See Mass. R. Crim. P. 12, 378 Mass. 866 (1979).[7] Therefore, states Aetna, quoting *Ideal Mut. Ins. Co.* v. *Winker*, 319 N.W.2d 289, 295 (Iowa 1982), "Once a guilty plea is accepted, a judicial determination has thus been made with respect to the essential elements of the crime." Aetna argues that that judicial determination should provide a basis for its invocation of collateral estoppel to preclude Bednarz from litigating whether he committed the essential elements of the crimes to which he pleaded guilty.

We disagree. It is true, as the trial judge points out in his report, that, before accepting a guilty plea, judges in this Commonwealth must take great pains to ensure that the plea has a basis in fact. Mass. R. Crim. P. 12 (c) (5) (A). See *Commonwealth* v. *Fernandes*, 390 Mass. 714, 719 (1984); *Commonwealth* v. *Foster*, 368 Mass. 100, 107 (1975). Nevertheless, "the taking of a guilty plea is not the same as an adjudication on the merits after full trial." *Ohio* v. *Johnson*, 467 U.S. 493, 500 n.9 (1984). When a defendant pleads guilty, waiving his right to a trial by jury, scarce judicial and prosecutorial resources are conserved. While the judge taking the plea must satisfy himself that there is a factual basis for a charge, he need not find that the defendant actually committed the crime to which he is pleading guilty. Cf. *North Carolina* v. *Alford*, 400 U.S. 25, 37-38 & n.10 (1970). Furthermore, because there have been no findings, a conviction after a plea of guilty does not present the possibility of inconsistent factual determina-

---

[7] Rule 12 (c) (5) (A) provides: "A judge shall not accept a plea of guilty unless he is satisfied that there is a factual basis for the charge. The failure of the defendant to acknowledge all of the elements of the factual basis shall not preclude a judge from accepting a guilty plea. Upon a showing of cause the tender of the guilty plea and the acknowledgement of the factual basis of the charge may be made on the record at the bench."

tions. For collateral estoppel purposes, those factors justify treating a conviction after a guilty plea differently from a conviction after a trial.

We emphasize that a defendant's guilty plea is not without consequence in subsequent civil litigation. The defendant's guilty plea and any other admissions made during the plea-taking colloquy with the judge are admissible as evidence in the civil litigation.

3. *Conclusion.* Niziolek's conviction for burning insured property in violation of G. L. c. 266, § 10, precluded him from relitigating in this action whether he had intentionally caused the house to be burned. Accordingly, we answer reported question number one "yes." A guilty plea has no preclusive effect in subsequent civil litigation. Accordingly, we answer reported question number two "no." We remand this case to the Superior Court for the entry of judgment for Aetna against Niziolek and for Bednarz against Aetna.

*So ordered.*