Arthur J. CINELLI, Plaintiff,
Appellant,

v.

CITY OF REVERE, et al.,
Defendants, Appellees.

No. 86–1794.

United States Court of Appeals,
First Circuit.

Argued Jan. 7, 1987.

Decided March 20, 1987.

Supplemental Opinion June 11, 1987.

Edward J. McCormack, III, with whom Law Office of Edward J. McCormack, III, was on brief, for plaintiff, appellant.

Ira H. Zaleznik, with whom, Lewin & Rosenthal, was on brief, for defendants, appellees.

Before BOWNES, Circuit Judge, ALDRICH, Senior Circuit Judge, and GIGNOUX,* Senior District Judge.

GIGNOUX, Senior District Judge.

Plaintiff-appellant Arthur J. Cinelli was indicted by a Middlesex County, Massachusetts, grand jury for various offenses stemming from an armed robbery and the shooting of a Medford police officer. Prior to trial, Cinelli filed a motion to dismiss the indictment on the ground that his sixth amendment right to counsel was violated by a custodial interrogation conducted by Detectives Michael Cutillo and Robert Nunez of the Revere Police Department. After an evidentiary hearing, a motion judge of the Superior Court denied the motion. Cinelli was subsequently convicted following a jury trial, and sentenced to twenty to twenty-five years imprisonment. The conviction was affirmed on appeal. *Commonwealth v. Cinelli*, 389 Mass. 197, 449 N.E.2d 1207 (1983). Cinelli then filed an action under 42 U.S.C. § 1983 (1982) in the United States District Court for the District of Massachusetts against Detectives Cutillo and Nunez and against the cities of Revere and Medford, seeking damages for the alleged violation of his sixth amendment right to counsel. The defendants filed a motion for summary judgment. At the hearing on that motion, Cinelli consented to dismissal of the complaint against the municipalities. The district court, citing *United States v. Mastroianni*, 749 F.2d 900 (1st Cir.1984), concluded that Cinelli could not establish any violation of his sixth amendment rights and granted summary judgment in favor of Cutillo and Nunez.[1] Cinelli appeals from the order dismissing the action against Cutillo and Nunez. Because our review of the record before the district court shows a genuine issue as to a material fact, the resolution of which requires a trial, Fed.R.Civ.P. 56(c),

we reverse the grant of summary judgment.

I.

The Massachusetts motion judge, after consideration of the testimony at the hearing on Cinelli's motion to dismiss the indictment, made detailed written findings of fact and rulings of law, which may be summarized as follows. On May 7, 1981, Cinelli was arrested on charges of armed robbery and assault with intent to murder. On the same day, he was arraigned in the Somerville District Court, where he was represented by court-appointed counsel. On May 8, he appeared at a bail review hearing in the Middlesex Superior Court, represented by retained counsel, who has remained his counsel since that time. Unable to post bail, Cinelli was incarcerated at the Billerica House of Corrections in an isolation section of the facility. Four days later, at approximately 7:15 p.m. on May 12, Detective Cutillo received an anonymous telephone call from a male who indicated that Cinelli wished to speak with him at Billerica. After receiving the anonymous call, Cutillo and Detective Nunez went to Billerica to speak with Cinelli, arriving between 8:30 and 9:00 p.m. The desk officer presented the two police officers with a waiver sheet on which they printed their names. As Cinelli was being taken from his cell and before he arrived at the reception area where Cutillo and Nunez were waiting, Cinelli was presented with the waiver sheet. He was told that two Revere police officers were there to see him, that he did not have to talk with them, and that he was entitled to have his lawyer present if he wished to speak with them. The defendant looked at the waiver sheet for approximately twenty to thirty seconds and appeared to be reading it. He then signed the waiver indicating that he would voluntarily talk to the detectives. At that point he was escorted to the reception area where he met with Cutillo and Nunez.

* Of the District of Maine, sitting by designation.

1. The district court's grant of summary judgment was by endorsement on the motion, without written findings or opinion.

Throughout the conversation that followed, Cinelli maintained his innocence, steadfastly denying any involvement in the armed robbery and indicating that he had an alibi. The detectives told Cinelli that the case against him appeared to be strong, that no lawyer would be able to help him, that he would spend up to a year in jail awaiting trial, that he could receive a life sentence if convicted, and that he would benefit by cooperating with the police in identifying other participants in the crime. The detectives also informed Cinelli that if he did not commit the armed robbery, they did not wish to see him convicted, and that if he was not guilty, he should give the detectives any information that could be helpful in establishing his innocence. Cinelli replied that he had friends on the street who were trying to find out who committed the robbery, and identified two of them named Costa and Lightbody. At Cinelli's request, the detectives permitted Cinelli, in their presence, to telephone Costa and Lightbody. He advised them that they could speak to Cutillo if they wished.

At the time of the May 12 conversation, Cutillo and Nunez had reason to believe Cinelli was represented by counsel and knew that he had the right to have counsel present during the interview. The detectives' purpose in visiting Cinelli was to see if he would cooperate with the police investigation, although they went to Billerica believing Cinelli had asked to see them. At some point during the conversation, Cinelli asked where his lawyer was and suggested that his lawyer should be present. The detectives did not know the identity of Cinelli's counsel, and did not attempt to identify or locate Cinelli's attorney before or during the interview.

Based on the foregoing findings of fact, the Massachusetts motion judge concluded: (1) that Cinelli's waiver of counsel prior to talking with the detectives was made "voluntarily, knowingly and intelligently," and hence was effective; and (2) that the conduct of the officers, although reprehen-

sible, did not warrant dismissal of the indictment because Cinelli did not make any incriminating statements during the interview and had shown "no specific evidence of prejudice." [2] In affirming Cinelli's conviction, the Supreme Judicial Court accepted the motion judge's finding that Cinelli was not prejudiced by the detectives' improper conduct and held that there was no error in the denial of the motion to dismiss. 389 Mass. at 207–11, 449 N.E.2d 1207.

## II.

The sixth amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." Cutillo and Nunez acknowledge that at the time they interviewed Cinelli, who had been previously charged and arraigned, his right to counsel had attached. *See United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984); *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977); *Kirby v. Illinois*, 406 U.S. 682, 688–89, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972). They also concede that Cinelli's written waiver of his right to the presence of counsel at the interview was invalid. *See Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986); *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981). And they admit that, despite the written waiver, they unquestionably should have terminated the interview when Cinelli suggested that his lawyer should be present. *See Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 484–85, 88 L.Ed.2d 481 (1985). They contend, however, that proof of prejudice is required to establish a violation of the sixth amendment right to counsel and argue that the facts show Cinelli suffered no prejudice as a result of the interview. Accordingly, they say, the district court was correct in entering summary judgment against Cinelli. We agree that a showing of prejudice

---

**2.** Although declining to dismiss the indictment, the motion judge stated that "[i]f the remedy sought by the defendant arose in the context of a motion to suppress incriminating statements of the defendant in his conversation with the detectives, the court would have no trouble in siding with the defendant."

must be made to establish a sixth amendment violation, but we also conclude that on the record before the district court there was a genuine issue of material fact as to whether Cinelli suffered prejudice as a result of the interview.

Decisions of the Supreme Court and of this Court instruct that a sixth amendment violation cannot be established without a showing that there is "a realistic possibility of injury" to the defendant or "benefit to the State." *Weatherford v. Bursey,* 429 U.S. 545, 558, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977); *United States v. Morrison,* 449 U.S. 361, 366, 101 S.Ct. 665, 669, 66 L.Ed.2d 564 (1981); *United States v. Mastroianni,* 749 F.2d at 907. In *Weatherford,* Weatherford, an undercover agent, met twice with defendant Bursey and his counsel, Wise, to discuss defense strategy. Weatherford communicated nothing about the meetings to the prosecution. The court of appeals adopted the rule that an agent's participation in a defense meeting amounted to a *per se* violation of the defendant's sixth amendment right. The Supreme Court rejected that rule and held that "[t]here being no tainted evidence in this case, no communication of defense strategy to the prosecution, and no purposeful intrusion by Weatherford, there was no violation of the Sixth Amendment...." 429 U.S. at 558, 97 S.Ct. at 845. Significantly, however, the Court added that

> [h]ad Weatherford testified at Bursey's trial as to the conversation between Bursey and Wise; had any of the State's evidence originated in these conversations; had those overheard conversations been used in any other way to the substantial detriment of Bursey; or even had the prosecution learned from Weatherford, an undercover agent, the details of the Bursey-Wise conversations about trial preparations, Bursey would have had a much stronger case.

*Id.* at 554, 97 S.Ct. at 843 (footnote omitted).

The facts in *Morrison* more closely resemble those in this case. In *Morrison,* federal agents, aware that defendant Morrison had been indicted on drug charges and had retained counsel, twice met with her without her attorney's knowledge or permission. The agents' purpose was to seek her cooperation in a related investigation. They disparaged Morrison's counsel and indicated that she would gain various benefits if she cooperated and would face a stiff jail term if she did not. Morrison refused to cooperate, did not incriminate herself or supply any information relevant to her case, and continued to rely upon the services of her attorney. The court of appeals held that, whether or not the defendant had been prejudiced, her sixth amendment right to counsel had been violated and dismissed the indictment with prejudice. The Supreme Court, in a unanimous opinion, reversed. The Court assumed, without deciding, a sixth amendment violation. 449 U.S. at 364, 101 S.Ct. at 667. It held that "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *Id.* at 365, 101 S.Ct. at 668 (footnote omitted). Although the Court concluded that the sixth amendment violation, if any, did not justify dismissing the criminal proceeding against Morrison, the Court was careful to observe that it was not "condon[ing] the egregious behavior of the Government agents," nor was it suggesting that in similar cases "a Sixth Amendment violation may not be remedied in other proceedings." *Id.* at 367, 101 S.Ct. at 669.

*Mastroianni* presented a fact pattern similar to that in *Weatherford. Mastroianni* was a consolidated appeal to this court by four defendants from their convictions for conspiracy to distribute cocaine. One of the issues defendants raised was whether their sixth amendment right to counsel was violated by the government's authorizing Cellilli, a defendant who was cooperating with the federal government, to attend a joint meeting of defendants and their counsel. After a twelve-day hearing, the district court denied defendants' pretrial motion to dismiss the indictment. In affirming, we accepted the district court's finding that the evidence presented by the government "fairly demonstrated that it

did not use any information impermissibly obtained from Cellilli"; we held that "[b]ecause no prejudice resulted to the defendant, there was no Sixth Amendment violation." 749 F.2d at 908.

These three cases answer some, but not all, of the possible questions in this case. At one end, an indictment is not to be dismissed when the sixth amendment violation does not benefit the prosecution or prejudice the defense of the criminal action. At the other end, if there was no prejudice to the criminal trial, and the defendant, plaintiff in the section 1983 action, suffered no emotional injury because of the officers' improper behavior, there can be no section 1983 recovery. We leave open the question of whether severe emotional injury, such as may have resulted in this case from the egregious misconduct of the officers, is something that may be remedied in a section 1983 action. *See Morrison,* 449 U.S. at 367, 101 S.Ct. at 669. We need not answer this question, as we believe that the record before the district court did not foreclose a finding under *Mastroianni* that the interview resulted in a benefit to the Commonwealth or a detriment to the defendant at the criminal trial.

In *Mastroianni,* we noted that the Supreme Court had not had occasion to determine what showing of prejudice to the defense of a criminal action is required to establish a sixth amendment violation and who bears the burden of proving it. Balancing the competing concerns, we concluded that

> in order to make a prima facie showing of prejudice the defendant must prove that confidential communications were conveyed as a result of the presence of a government informant at a defense meeting. Upon such proof, the burden shifts to the government to show that there has been and there will be no prejudice to the

defendants as a result of these communications.

749 F.2d at 907–08 (citations and footnote omitted).

■ With this legal standard in mind, we turn to the question of whether the record in this case supports a finding that Cinelli's defense of the criminal action was not prejudiced by the interview. The Massachusetts Superior Court motion judge found that during the interrogation Cinelli conveyed to the detectives his intention to present an alibi defense and the names of two potential alibi witnesses, Costa and Lightbody. By establishing that the defense strategy was communicated to the detectives, Cinelli madé a prima facie showing of prejudice. The burden then shifted to Cutillo and Nunez to show that these communications resulted in no prejudice to Cinelli.

■ It is at this point that we have difficulty with the district court's grant of summary judgment. The limited record before the district court[3] did not include the transcript of Cinelli's trial, and neither the district court nor we have any way of determining whether the Commonwealth benefited from the disclosures made by Cinelli to the detectives. Nor is it possible to ascertain from the record whether the Commonwealth had identified Costa and Lightbody as potential alibi witnesses prior to the interview. Although the Massachusetts Supreme Judicial Court in affirming Cinelli's conviction observed that the Commonwealth had identified Costa as a possible suspect prior to the interview, *see* 389 Mass. at 211, 449 N.E.2d 1207, the record upon which that court relied was not before the district court in this case. Moreover, even accepting this statement as fact, it is still unclear whether the police learned for the first time during the interview that Cinelli intended to rely on an alibi defense or that Costa's involvement was as a poten-

---

**3.** The materials submitted by the defendants in support of their motion for summary judgment consisted of: an affidavit of Cutillo setting forth his version of the interview with Cinelli; an affidavit of the Acting Chief of the Revere Police Department incorporating a portion of the Revere Police Manual; a transcript of the hearing before the Massachusetts motion judge on Cinelli's motion to dismiss the indictment; a copy of the motion judge's memorandum of decision on the motion to dismiss; a copy of the waiver form signed by Cinelli; and a copy of the opinion of the Massachusetts Supreme Judicial Court.

tial alibi witness. In any event, we find nothing in the record to suggest that the Commonwealth already had Lightbody's name.

On the record before the district court there was a genuine issue of material fact as to whether Cinelli's defense of the criminal action was prejudiced by the communication of his defense strategy to Cutillo and Nunez. We leave to another day whether the evidence may warrant a finding of recovery here even if there was no prejudice to the criminal trial.

The district court's grant of summary judgment is

*Reversed.* [4]

## SUPPLEMENTAL OPINION

Defendants-appellees Cutillo and Nunez have filed a petition for rehearing of the above appeal in banc. Reading it brings to our attention that our opinion, failed to deal with the issue of collateral estoppel, now stressed by appellees. We accordingly supplement that opinion, and address appellees' arguments.

In our decision, we reversed the district court's grant of summary judgment in favor of Cutillo and Nunez; we held that "[o]n the record before the district court there was a genuine issue of material fact as to whether Cinelli's defense of the criminal action was prejudiced by the communication of his defense strategy to Cutillo and Nunez." 814 F.2d at 22. We also declined to consider Cutillo's and Nunez's claim of qualified immunity, because the district court had not reached that issue. *Id.* at 22, n. 4.

Appellees' principal contention is that our finding of a genuine issue of material fact as to whether Cinelli was prejudiced failed to accord to the prior decisions of the Massachusetts state courts the preclusive

effect required by the doctrine of collateral estoppel.[1] We reject this argument.

It is well established that the doctrine of collateral estoppel, or issue preclusion, applies in civil rights actions brought pursuant to 42 U.S.C. § 1983 (1982). *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). A federal court must give the same preclusive effect to issues already decided as would be given by the courts of the state in which the federal court sits. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982).

Massachusetts courts apply the general rule of issue preclusion as set forth in the Restatement (Second) of Judgments (1982). *Aetna Casualty & Sur. Co. v. Niziolek,* 395 Mass. 737, 481 N.E.2d 1356 (1985); *Massachusetts Property Ins. Underwriting Ass'n v. Norrington,* 395 Mass. 751, 481 N.E.2d 1364 (1985). *See Isaac v. Schwartz,* 706 F.2d 15, 16 (1st Cir.1983). Section 27 of the Restatement provides that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982). Massachusetts courts have abandoned the requirement of mutuality and apply the doctrine of collateral estoppel in subsequent litigation with other parties. *Aetna Casualty & Sur. Co., supra,* 481 N.E.2d at 1359; *Massachusetts Property Ins. Underwriting Ass'n, supra,* 481 N.E.2d at 1366. *See* Restatement (Second) of Judgments § 29 (1982).

The general rule of collateral estoppel is not without exceptions. One exception exists when

---

**4.** Because the district court did not reach Cutillo's and Nunez's claim of qualified immunity, we decline to consider that defense.

**1.** Appellees also assert that our refusal to consider the qualified immunity defense was an improper exercise of judicial discretion. We are well aware that an appellate court *may* affirm a grant of summary judgment on differ-

ent grounds than those cited by the court below. *See generally* 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2716, at 658 (1983). Such action, however, is discretionary, not mandatory. *Id.* We remain of the view that the qualified immunity issue should first be determined by the district court on a full record after remand.

[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action....

*Id.*, § 28(4). *See also* C. Wright, *Law of Federal Courts* 683–84 (4th ed. 1983) (collateral estoppel inapplicable if there is a significant difference in the burden of persuasion on the issue in the two actions) (footnotes omitted).

In *United States v. Mastroianni,* 749 F.2d 900 (1st Cir.1984), we formulated for the first time the burden of proof as to prejudice in a sixth amendment case. There, we stated that a defendant makes a prima facie case of prejudice by proving that the prosecution received confidential communications about the defense's strategy or position; upon such proof, the burden shifts to the prosecution to prove that there has been and will be no prejudice to the defendant as a result of the communications. *Id.* at 907–08.

■ Cinelli originally asserted prejudice in state court in the context of a motion to dismiss the indictment against him. The Massachusetts motion judge found that Cinelli had not been prejudiced and denied the motion. *Commonwealth v. Cinelli,* Crim. No. 81–1489 to 81–1492, slip op. (Middlesex County Super. Ct., Sept. 11, 1981). That decision, however, is unclear as to the burden of proof applied by the judge. At one point he concluded that "the Commonwealth has made an affirmative showing that the detectives' error here was harmless and that the defendant Cinelli was not prejudiced." *Id.* at 16. Elsewhere in his decision, however, he found that "no specific evidence of prejudice has been shown *by the defendant.*" *Id.* at 13 (emphasis added). The motion judge's statement that there was no showing of prejudice by the defendant suggests that he did not properly apply the *Mastroinni* standard. Uncertainty as to whether the correct burden of proof was applied is compounded by the decision of the Supreme Judicial Court af-

firming the lower court's decision. The Supreme Judicial Court noted that "[i]n this case there is no showing of any prejudice whatsoever." *Commonwealth v. Cinelli,* 389 Mass. 197, 210, 449 N.E.2d 1207 (1983). Again, the language suggests that it was Cinelli's burden to prove prejudice—a burden that is improper under *Mastroinni.*

Because it is unclear whether the state courts imposed the proper burden of proof, we conclude that the doctrine of collateral estoppel does not preclude Cinelli from litigating the question of prejudice in this action.