Eileen A. FINUCANE, Plaintiff,

v.

TOWN OF BELCHERTOWN,
et al., Defendants.

Civ. A. No. 91–30120–F.

United States District Court,
D. Massachusetts.

Dec. 18, 1992.

## MEMORANDUM REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]

(Docket No. 22)

PONSOR, United States Magistrate Judge.

### I. INTRODUCTION.

Plaintiff, Eileen Finucane ("plaintiff" or "Finucane") has filed this five-count complaint against the defendants, the Town of Belchertown and several of its police officers ("defendants"), alleging violations of state and federal laws arising out of her arrest on August 2, 1989, for operating under the influence of alcohol. Counts I and II allege violations of plaintiff's federal and state civil rights based on her alleged arrest without probable cause; Counts III through V offer pendent state law claims of intentional infliction of emotional distress, false arrest, and negligence under Mass.Gen.Law ch. 258, § 4.

Now before the court is defendants' motion for summary judgment, claiming among other things that the defendants cannot be held liable for violations of the plaintiff's civil rights because probable cause existed to arrest the plaintiff for operating under the influence of alcohol. For the reasons set forth below, the defendants' motion for summary judgment will be allowed on all counts.

### II. FACTUAL BACKGROUND.

The court will view the facts, as it must in deciding a motion for summary judgment, in the light most favorable to the non-moving party, here the plaintiff.

On August 2, 1989, plaintiff drove from her home in Northampton to Boston to attend a Boston Red Sox night game at Fenway Park. While in Boston, but before arriving at Fenway, plaintiff went to a bar to check on the game (which was already in progress) and had one beer. Plaintiff's

Meade G. Burrows, Burrows and Weiss, Northampton, MA, for Eileen A. Finucane.

Kimberly Michele Saillant, Morrison, Mahoney & Miller, Boston, MA, for Town of Belchertown, Robert Knight, Francis R. Fox, Jr., Kevin G. Truehart.

1. The parties to this action have waived their right to proceed before a district judge and consented to have this magistrate judge conduct any and all further proceedings in the case, including the trial, and order the entry of judgment. Fed.R.Civ.P. 73, 28 U.S.C. § 636(c).

Exhibit 3, Affidavit of Eileen Finucane ("Finucane Aff.") at ¶ 4. While at the game, plaintiff states she did not consume any alcohol. *Id.* at ¶ 5.

After the game ended, plaintiff proceeded to her car to return home. Before leaving Boston, plaintiff filled her radiator with anti-freeze, and then placed the bottle of anti-freeze on the passenger side of the front seat of the car. The bottle of anti-freeze tipped over, but plaintiff was able to clean most of the spill. *Id.* After doing this, plaintiff began her journey home.

Defendant Officer Truehart ("Truehart"), an off-duty police officer with the Town of Belchertown, states that at approximately 2:10 a.m. he observed plaintiff driving erratically for three to four miles on Route 181 in Belchertown. Truehart drove to the Belchertown Police Department and notified the dispatcher of plaintiff's operation of her motor vehicle and gave a description of the vehicle, including the license plate number. Defendants' Exhibit C, Affidavit of Kevin G. Truehart ("Truehart Aff.") at ¶¶ 11–14.

Meanwhile, plaintiff, tired from the long drive, decided to pull over at a Dairy Mart in Belchertown for a short rest before continuing on home. Complaint at ¶ 10; Finucane Aff. at ¶ 6. Upon entering the parking lot, plaintiff noticed that the Dairy Mart was closed. She turned off her lights but kept the engine running. Shortly thereafter, she noticed two cars entering the vacant parking lot, one of which was a police cruiser. Complaint at ¶ 10. Plaintiff decided to find a quieter place to rest. As she began to exit the parking lot, defendant Belchertown Police Officer Fox ("Fox") stopped her and asked for her license and registration. *Id.* at ¶ 11.

According to Officer Fox, plaintiff's eyes appeared glazed and her face seemed flushed. Plaintiff explained to Fox that she had difficulty seeing at night and that she was tired from the long drive home. Defendants' Exhibit D, Deposition of Ei-

leen Finucane ("Finucane Dep.") at 67, 86. While Officer Fox was speaking with plaintiff, he noticed that her speech was slurred and at times difficult to understand.

Plaintiff was then asked to exit her vehicle and perform various field sobriety tests. Before commencing the testing, Officer Fox asked plaintiff if she suffered from any mental or physical impairments which would affect her ability to perform the tests. Defendants' L.R. 56.1 at ¶ 8. Despite the fact that plaintiff suffered from a severe speech impediment, she responded that she did not have any such impairments.[2] Complaint at ¶ 14.

Officer Fox detected an odor of alcohol emanating from plaintiff's car and asked her if she had drunk any alcoholic beverages that night. Defendants' Exhibit E, Affidavit of Francis Fox ("Fox Aff.") at ¶ 15; Plaintiff's Exhibit 7, Deposition of Francis Fox ("Fox Dep.") at 25. Officer Fox states that plaintiff admitted that she had drunk a couple of beers earlier in the day. Plaintiff denies this, but does admit to having consumed the one beer prior to her arrival at Fenway.

Plaintiff observed Officer Truehart search her car and sniff a bottle of seltzer. Complaint at ¶ 16. Plaintiff admits that there was an empty bottle of beer on the passenger side of the front seat. Defendants' Exhibit D, Finucane Dep. at 99–100. Fox told the plaintiff that both her breath and the bottle of seltzer had an odor of alcohol. Plaintiff explained that the officer probably smelled the anti-freeze that had spilled in her car earlier that evening, which she said also explained why her shorts were wet. Complaint at ¶¶ 18–19.

Officer Truehart assisted Officer Fox in administering the field sobriety tests to plaintiff. These tests included reciting the alphabet twice, performing a one-legged stand, walking with her head leaning backward while counting to number 32, and walking a straight line. *Id.* at ¶ 13. According to Officer Fox, plaintiff appeared

---

**2.** In her affidavit, plaintiff explains that she has been evaluated for a speech impediment and underwent speech therapy during her high school and college years. However, plaintiff notes that she had not been in therapy from 1987 up to the time of her arrest. Plaintiff's Exhibit 3, Affidavit of Eileen Finucane ("Finucane Aff.") at ¶ 3.

unsteady on her feet when exiting the vehicle. When asked to recite the alphabet, her speech was slurred and she spoke in a low voice. Defendants' Exhibit E, Fox Aff. at ¶ 16, 19; Plaintiff's Exhibit 7, Fox Dep. at 28, 34. Fox noted that on several occasions, plaintiff had difficulty following his instructions. Defendants' Exhibit E, Fox Aff. at ¶¶ 20–22. After completing the field sobriety tests, Officer Fox placed plaintiff under arrest for operating under the influence of alcohol and transported her to the Belchertown Police Department.

Once at the Belchertown Police Department, plaintiff underwent a breathalyzer test. The reading of the breathalyzer machine was .00, indicating that there was no trace of alcohol in her system. Complaint at ¶ 20. As a result, plaintiff was released from custody and the charge of operating under the influence of alcohol was dropped. *Id.* at 21. At a later date in Ware District Court, the charge of operating to endanger was also dropped. The plaintiff was, however, found "responsible" for crossing marked lanes and assessed a civil fine of $100.00. Plaintiff's Exhibit 1.

### III. DISCUSSION.

A. *Counts I, II, and V—Federal and State Civil Rights Violations and False Imprisonment.*

In Counts I and II of her complaint, plaintiff alleges that the defendants Fox and Truehart violated her civil rights by arresting her without probable cause. At oral argument, the plaintiff stipulated to the dismissal of the *Monell* claims against Chief Knight and the Town of Belchertown, and the claim of violations of the Fifth, Sixth, Eighth, and Ninth Amendments. Defendants Fox and Truehart argue that they cannot be held liable for violations of plaintiff's civil rights under § 1983 and Mass.Gen.Laws ch. 12, §§ 11I and 11H, because probable cause existed to arrest the plaintiff.

▆▆▆ "The Fourth Amendment right to be free from unreasonable seizures of the person demands that an arrest be supported by probable cause." *Santiago v.*

*Fenton,* 891 F.2d 373, 383 (1st Cir.1989) (citing *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 224, 13 L.Ed.2d 142 (1964)). If Officers Truehart and Fox lacked probable cause to arrest the plaintiff, then liability can arise under 42 U.S.C. § 1983 and Mass. Gen.Laws ch. 12, §§ 11I and 11H. *Santiago v. Fenton,* 891 F.2d at 383 (citing *Batchelder v. Allied Stores Corp.,* 393 Mass. 819, 822–23, 473 N.E.2d 1128 (1985)).

▆▆▆ The Massachusetts common law requirement that the officers have "reasonable grounds" for making an arrest has been held to be "substantially overlapping with the constitutional requirement of probable cause." *Id.* Massachusetts, however, imposes an additional requirement on an officer making a warrantless arrest:

A peace officer, in the presence of a statute, may arrest without a warrant for a misdemeanor which (1) involves a breach of the peace, (2) is committed in the presence or view of the officer, and (3) is still continuing at the time of the arrest or only interrupted, so that the offense and the arrest form parts of one transaction.

*Commonwealth v. Gorman,* 288 Mass. 294, 297, 192 N.E. 618, 619 (1934). *See also Santiago v. Fenton,* 891 F.2d at 383.

The First Circuit, in *Rivera v. Murphy,* 979 F.2d 259 (1st Cir.1992), recently reviewed the basic tenets of probable cause. The court noted that the determination of probable cause is an objective rather than a subjective test because "if subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate...." *Id.* at 263 (quoting *Beck v. Ohio,* 379 U.S. 89, 97, 85 S.Ct. 223, 229, 13 L.Ed.2d 142 (1964)).

Therefore, we have stated that probable cause exists when 'the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.'

*Id.* (quoting *United States v. Figueroa,* 818 F.2d 1020, 1023 (1st Cir.1987) (quoting

**910**

*Beck v. Ohio*, 379 U.S. at 91, 85 S.Ct. at 225 (1964)).

■ For several reasons, the facts of this case support the finding of probable cause. First, when approached by the officers, plaintiff's eyes appeared bloodshot and glassy; at times, she was difficult to understand. Plaintiff admitted that she was tired from her drive from Boston, found it difficult to see at night, and that, although she did not cross over the marked lanes, she may have driven onto the center line. Defendants' Exhibit D, Finucane Dep. at 66. Second, plaintiff was stopped at an early morning hour and admitted to having consumed at least one alcoholic beverage earlier that night. *Id.* at 53. Third, plaintiff conceded that there was an empty bottle of beer in plain view on the front passenger seat of her car and that Officer Fox rightly detected an odor of alcohol emanating from her vehicle. Fourth, before being asked to perform field sobriety tests, plaintiff was asked whether she had any handicaps which would affect the outcome of the tests. Plaintiff admits telling the officers that she did not suffer from any infirmities, when in fact she had been treated for a speech impediment. *Id.* at 25. Finally, plaintiff failed to satisfactorily perform certain portions of the field sobriety tests administered at the scene, and at times her speech concededly was slurred and she appeared unsteady on her feet.

When viewed as a whole, these facts constituted sufficiently trustworthy information to warrant a reasonably prudent person in believing that the plaintiff was operating a motor vehicle under the influence of alcohol. The fact that the breathalyzer test indicated that plaintiff was not under the influence of alcohol does not affect the conclusion that plaintiff's arrest was supported by probable cause. As the Supreme Court noted in *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), the determination of probable cause is a

> practical, nontechnical conception affording the best compromise that has been found for accommodating ... often opposing interests. Requiring more would unduly hamper law enforcement.

*Id.* at 91, 85 S.Ct. at 226 (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)). The determination of probable cause requires "more than mere suspicion" but "less evidence than that to support a conviction." *Commonwealth v. Rivet*, 30 Mass.App.Ct. 973, 974, 573 N.E.2d 1019, 1020 (1991) (citation omitted).

■ The defendants have also satisfied the additional requirement imposed under Massachusetts law to support a finding of probable cause or reasonable grounds for an arrest. In this case, it is undisputed that operating a motor vehicle while intoxicated is a misdemeanor involving a breach of the peace, *see* Mass.Gen.Laws ch. 90, § 24, and all of plaintiff's conduct was observed by Officers Fox and Truehart. Again, on *plaintiff's* version of the facts, her arrest for operating under the influence of alcohol meets the requirements for a lawful warrantless arrest under Massachusetts law.

In *Commonwealth v. Rivet*, 30 Mass.App.Ct. 973, 573 N.E.2d 1019 (1991), the defendant was arrested for operating under the influence of alcohol. The court stated that there was ample evidence supporting a finding of probable cause, including "[t]he odor of alcohol on [defendant's] breath, his admission to have consumed 'only one beer,' [and] his glassy eyes...." *Id.* at 974, 573 N.E.2d at 1020. The facts in this case are stronger than those presented to the Massachusetts Court of Appeals in *Rivet* and support a finding of probable cause to arrest.[3]

■ Because the court has found the defendants' arrest was supported by probable cause, plaintiff's claim for false imprisonment must also fail. See Mass.Gen. Laws ch. 231, § 94A (probable cause is a defense against a claim for false imprisonment). Defendants' motion for summary

---

**3.** Plaintiff has argued that a videotape taken of plaintiff at the time of her booking supports her case. The court has viewed the tape. It does not bear on the key issue here: probable cause at the time of arrest.

judgment on Counts I, II, and V must be allowed.

B. *Counts III and IV—Intentional Infliction and Negligence.*

■ Count III of plaintiff's complaint alleges intentional infliction of emotional distress. Defendants contend that the plaintiff has failed to show that their conduct was "extreme and outrageous" under the *Agis* standard. The court agrees.

■ In *Agis v. Howard Johnson Company,* 371 Mass. 140, 355 N.E.2d 315 (1976), the S.J.C. allowed recovery for intentional infliction of emotional distress absent physical harm. In order to establish a claim for intentional infliction of emotional distress, however, the plaintiff must prove the following.

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community,'; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.'

*Agis v. Howard Johnson Company,* 371 Mass. 140, 145, 355 N.E.2d 315, 319 (1976). Liability cannot be based on "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities..." *Foley v. Polaroid Corp.,* 400 Mass. 82, 99, 508 N.E.2d 72, 81 (1987).

In support of her argument that defendants inflicted emotional distress, plaintiff claims that as a result of her false arrest for operating under the influence, she was visibly shaken and suffered severe emotional distress.

In order to establish a claim for intentional infliction of emotional distress, the court must look to whether the defendants' conduct was "extreme and outrageous" and "utterly intolerable in a civilized community," and not simply offensive to plaintiff's subjective feelings. It is reasonable to conclude that, for most people, arrest is a traumatic experience, especially if the charges later prove to be false. However, this factor alone does not give rise to a claim for intentional infliction of emotional distress—especially where, as here, the court has held that the plaintiff's arrest was supported by probable cause. While the plaintiff's experience was undoubtedly highly unpleasant, the facts of this case simply do not support a claim for intentional infliction of emotional distress.

■ Likewise, plaintiff's claim against the Town of Belchertown for negligence under Mass.Gen.Laws ch. 258, § 4 must also fail. Plaintiff claims that the Town should be held liable for Officer Fox's negligence in failing to observe plaintiff's operation of her vehicle on Route 181, in misconstruing a speech impediment as a sign of intoxication, and in mistaking anti-freeze in plaintiff's car as alcohol. Because the court has held that the defendants had reasonable grounds or probable cause in concluding that plaintiff was intoxicated, the plaintiff's claim for negligence against the Town of Belchertown for its officers' actions must fail.

## IV. CONCLUSION.

This ruling is not made lightly. It is never easy to deprive a litigant of the opportunity to present her case to a jury. Moreover, it is impossible not to sympathize with what must have been a frightening and even devastating experience. But it would be false generosity to draw out litigation, which is itself painful, when the plaintiff's facts are insufficient to satisfy the basic elements of her legal claims.

For all of the foregoing reasons, the defendants' motion for summary judgment must be ALLOWED on all counts. A separate order will issue.