**Earl SHOLLEY, Plaintiff,**

v.

**TOWN OF HOLLISTON, Alan Bolduc, and David Gatchell, Defendants.**

No. 97cv10676–PBS.

United States District Court, D. Massachusetts.

April 1, 1999.

Gregory A. Hession, Belchertown, MA, pro se.

Stacey L. Parker, Hutchins, Wheeler & Ditmar, Boston, MA, pro se.

Mark D. Robins, Hutchins, Wheeler & Dittmar, Boston, MA, pro se.

### *REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 35)*

SARIS, District Judge.

I adopt the Report and Recommendation without objection.

KAROL, United States Magistrate Judge.

This case has been referred to me pursuant to 28 U.S.C. § 636(b) for my Report and Recommendation on Defendants' motion for summary judgment (Docket No.

35). Plaintiff, Earl Sholley ("Plaintiff"), has filed a three-count civil rights action against the Town of Holliston ("the Town") and two of its police officers, Officer David Gatchell ("Gatchell") and Sergeant Alan Bolduc ("Bolduc"). The complaint arises out of Plaintiff's 1994 arrest for violation of a restraining order issued pursuant to G.L. c. 209A (a charge on which he was acquitted) and for his failure to submit to a police officer, in violation of G.L. c. 90 § 25 (a charge on which he was convicted). In essence, Plaintiff alleges that the individual defendants violated his Fourth Amendment right to be free from unreasonable seizures when Gatchell, acting on information provided by Bolduc, arrested Plaintiff without probable cause. Plaintiff further claims that the Town violated the same Fourth Amendment right by maintaining a custom or policy of inadequately investigating situations involving restraining orders—a policy of "deliberate indifference" to the constitutional rights of its citizens.

For reasons discussed below, I conclude that were Plaintiff to show that there was no probable cause for his arrest, he would impliedly undermine his conviction for failure to submit. Supreme Court precedent prohibits this result. *See Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Moreover, even if *Heck* did not bar Plaintiff's false arrest claim, summary judgment should enter in favor of the individual defendants because no reasonable jury could conclude that Gatchell arrested Plaintiff without probable cause or pursued him without the requisite justification. Where the arrest was justified as a matter of law, Plaintiff's state law count for intentional infliction of emotional distress must also fail. *See Finucane v. Belchertown*, 808 F.Supp. 906, 911 (D.Mass.1992). Plaintiff's corollary claim against the Town should be dismissed where Plaintiff has failed to prove a requisite element of municipal liability under section 1983—a constitutional deprivation. Finally, to the extent that Plaintiff has

pled and pursued a section 1983 claim for malicious prosecution with respect to a baseless charge that he violated a restraining order, summary judgment should enter on behalf of Gatchell and Bolduc where no reasonable jury could conclude that Plaintiff has satisfied the elements of that tort. *See Meehan v. Town of Plymouth*, 167 F.3d 85, 88–89 (1st Cir.1999). I therefore recommend that all of Plaintiff's counts be DISMISSED and that judgment enter on behalf of Defendants.

## I. Summary Judgment

A motion for summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir. 1998). The facts must be viewed "in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo Inc.*, 96 F.3d 10, 14 (1st Cir.1996).

## II. Background [1]

On March 1, 1994, the Framingham District Court issued an abuse prevention order against Plaintiff. Pursuant to G.L. c. 209A, the *ex parte* order required Plaintiff, among other things, to stay at all times at least 300 yards away from his daughter, Kathryn Sholley, and to "stay away from [his daughter's] residence . . . located at 29 Maple Dell Lane, Holliston." Abuse Prevention Order, attached as Ex. A to *Complaint and Jury Demand*, Docket No. 4. The order, which was to be in effect until a further hearing scheduled for March 8, 1994, did not specify a particular distance that Plaintiff was to maintain between himself and the residence. *Id.*

---

1. Unless otherwise indicated, the facts presented below are undisputed.

At approximately 7:00 P.M. on March 4 of that year, Officer Gatchell was driving his police cruiser on Central Street in Holliston. Gatchell observed Plaintiff behind the wheel of his van, which was stopped at the intersection of Central Street and Maple Dell Lane. Plaintiff's wife, Elizabeth, who was in the process of exiting the van, called out to Gatchell that "it was all right, he's just dropping me off." Pl.Aff., Docket No. 39, ¶ 5; Pl.Dep., attached as Ex. B to Docket No. 38, at 61; Elizabeth Sholley Aff., Docket No. 44, ¶ 5. Elizabeth Sholley states that Gatchell replied "O.K.," rolled up his window and drove off. Elizabeth Sholley Aff. at ¶ 5.[2]

Gatchell knew that a restraining order had entered against Plaintiff and contacted the Holliston Police Department by radio to determine whether that order was still in effect and, if it was, to verify its terms. Def. and Pl. Statements of Undisputed Material Facts, ¶ 34. Gatchell states (and no one denies) that he spoke to Bolduc, who accurately reported that the restraining order was in effect and inaccurately reported that the order required Sholley to remain 300 yards from the Maple Dell Lane residence. Gatchell Aff. at 8. Based on Bolduc's report, and the fact that the intersection of Central Street and Maple Dell Lane was less than 300 yards from 29 Maple Dell Lane, Gatchell concluded that Plaintiff was in violation of the abuse prevention order. *Id.* at 9. Knowing that Plaintiff had already left the intersection where he had dropped off Ms. Sholley, Gatchell pulled his cruiser over on Central Street and waited for Plaintiff to arrive.

At some point after Plaintiff passed Gatchell on Central Street, Gatchell activated his emergency lights in an attempt to pull Plaintiff over. Although the parties dispute precisely when Gatchell activated his lights, Plaintiff acknowledges failing to stop after realizing that Gatchell wished to

pull him over. Pl.Dep. at 64–65. Plaintiff states that he intended to seek asylum in his church because he feared harassment by the police and because there were no other witnesses in the area. Pl.Dep. at 66; Pl.Aff. at ¶ 8. In the meantime, Gatchell radioed for assistance from two other police cruisers in the area.

Upon arriving in the church parking lot, Plaintiff fled from his vehicle and ran toward the church rectory. Before Plaintiff was able to enter it, a police officer grabbed his arm, but Plaintiff broke free and succeeded in entering the rectory. A short time later, Gatchell and two other officers arrested Plaintiff, handcuffed him, and took him to the Holliston Police Station for booking. Bolduc was not present at and did not participate in the arrest.

At the station, Bolduc processed Plaintiff. Plaintiff remained silent through much of the booking process, and, although his native language is English, responded to many of Bolduc's questions in Spanish, because, he says, his arrest "was an absurd situation." Pl.Dep. at 96. Plaintiff was then taken to a holding cell, where he remained for between three and four hours until he complained of tightness in his chest and chest pain. Pl.Dep. 101–03. Plaintiff was transferred by ambulance to a local hospital around midnight, admitted, and treated for onset atrial fibrillation. After successful treatment, Plaintiff was discharged on March 7.

Gatchell, but not Bolduc, signed a criminal complaint charging Plaintiff with violating the March 1 abuse prevention order and with failure to submit to a police officer. Plaintiff eventually pled guilty to the failure to submit charge and was assessed the statutory $100 fine. A community service obligation was also imposed. Plaintiff was acquitted of the alleged restraining order violation.[3]

---

**2.** Plaintiff does not recall Gatchell responding to his wife's statement. Pl.Dep. at 70.

**3.** Presumably, the factfinder acquitted Plaintiff because it was undisputed that Kathryn

Sholley was not at home (and thus not within 300 yards of Plaintiff) when Plaintiff dropped his wife off at the intersection of Central Street and Maple Dell Lane. Although the

### III. The Instant Action

Plaintiff brought this civil rights action pursuant to 42 U.S.C. § 1983 on March 4, 1997. In Count I of his complaint, Plaintiff alleges that the Town of Holliston had a custom or policy of "inadequately or improperly investigating issues involving restraining orders." Plaintiff argues that this policy resulted in his being arrested without probable cause, as well as in "severe physical and emotional distress, in his reputation and dignity." *Complaint,* ¶¶ 18–21.

. In Count II, Plaintiff claims that Defendants Gatchell and Bolduc's conduct resulted in his being arrested without probable cause. Plaintiff also states that Gatchell and Bolduc "maliciously prosecuted" him. *Complaint* at ¶ 25.

In Count III, Plaintiff claims that Defendants Gatchell and Bolduc by their conduct caused him "severe emotional distress" under Massachusetts law. Plaintiff invokes this court's supplemental jurisdiction with respect to Count III. *Complaint* at ¶ 2; *see* 28 U.S.C. § 1367(a).

The court denied without comment Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief could be granted on August 15, 1997. Docket No. 10. Pursuant to the court's scheduling order, discovery was completed on July 1, 1998. Docket No. 24.

### IV. Discussion

#### A. False Arrest

■ Defendants argue persuasively that Plaintiff's false arrest claim is barred by *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the Supreme Court held that a section 1983 plaintiff may not recover damages "for allegedly unconstitutional conviction ... or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless that plaintiff first proves that the conviction or sentence has been reversed, expunged or otherwise declared invalid. 512 U.S. at 486–87, 114 S.Ct. 2364. *Heck* stresses the importance of finality and consistency of criminal convictions and reaffirms the notion that civil tort actions are rarely the appropriate vehicle for challenging the validity of outstanding criminal judgments. *Id.* at 484–85, 114 S.Ct. 2364.

Plaintiff was arrested for violation of an abuse prevention order and for failure to submit. By his guilty plea, he was duly convicted for failure to submit. That conviction still stands. Although it is true that Gatchell also arrested Plaintiff for violation of an abuse prevention order and that Plaintiff was not convicted on that charge, these facts are irrelevant to determining whether Plaintiff has a cognizable claim for false arrest under section 1983. The arrest was a single, indivisible event. If there was probable cause for any of the charges made—here either failure to submit or violation of an abuse prevention order—then the arrest, of which there was only one, was supported by probable cause, and the claim for false arrest fails. *Wells v. Bonner,* 45 F.3d 90, 95 (5th Cir. 1995). Stated somewhat differently, because there was only a single incident, Plaintiff, in order to prevail on his section 1983 false arrest claim, would have to prove that Gatchell did not have probable cause to arrest him for *any* reason. But proof that there was no probable cause to arrest for any reason necessarily implies the invalidity of the conviction for failure to submit. *Heck,* 512 U.S. at 486–87, 114 S.Ct. 2364. This is precisely the situation that *Heck* does not countenance.

The Fifth Circuit's decision in *Wells* is almost identical to this case. 45 F.3d at 95. There, police arrested the plaintiff for disorderly conduct and resisting a search incident to an arrest. Although the disor-

---

order also required Plaintiff to "stay away" from the residence, the factfinder could have concluded that Plaintiff, being approximately 200 yards from the house, was far enough "away" to comply with this nonspecific provision of the order.

derly conduct charge was dropped before trial, the plaintiff's conviction for resisting a search precluded his section 1983 action for false arrest. The court, citing *Heck*, stated:

> [Wells] was duly convicted—a conviction that still stands—for resisting a search. Although it is true that the defendant officers also charged Wells with disorderly conduct, and that Wells was not convicted on that charge, these facts are insignificant in determining whether Wells presently has a § 1983 claim for an unconstitutional arrest. The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead, we focus on the validity of the arrest. If there was probable cause for any of the charges made—here either disorderly conduct or resisting a search—then the *arrest* was supported by probable cause, and the claim for false arrest fails.

*Wells*, 45 F.3d at 95 (emphasis in original); *see also Berman v. Turecki*, 885 F.Supp. 528, 532 n. 9 (S.D.N.Y.1995) (barring section 1983 action based on dismissed charges where they were "inextricably intertwined" with the charge of conviction); *Frazier v. Woods*, 1998 WL 146231, *4 (S.D.N.Y.1998) (*Heck* analysis unaffected by Plaintiff's conviction on only five of twelve charges where charges were "closely related, stemming from the same facts and type of conduct...").

█ Even if *Heck* did not bar Plaintiff's claim for false arrest, I would find that Gatchell's arrest of Plaintiff was justified by probable cause or, at the very least, that his pursuit of Plaintiff was justified by a reasonable, articulable suspicion of unlawful activity under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Defendants are correct to distinguish between the level of suspicion a police officer needs to arrest a suspect and the lesser level of suspicion necessary to conduct an investigative (or *"Terry"*) stop. *United States v. Young*, 105 F.3d 1, 6 (1st Cir.1997). To arrest an individual, an officer must act upon probable cause that an individual has committed a crime. Probable cause exists when a police officer, relying on reasonably trustworthy facts and circumstances, has information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime. *United States v. Maguire*, 918 F.2d 254, 258 (1st Cir.1990). A *Terry* stop, however, only requires that an officer have a reasonable and articulable suspicion of criminal activity. With such reasonable, articulable suspicion, an officer may briefly detain an individual to confirm or dispel that suspicion. *Young*, 105 F.3d at 6.

█ When Plaintiff refused to stop for Gatchell's emergency lights, Gatchell clearly had probable cause to arrest him for failure to submit.[4] Moreover, independent of Plaintiff's failure to submit, Plaintiff's flight also supported Gatchell's justification for arresting Plaintiff for violation of the abuse prevention order. *See United States v. Khounsavanh*, 113 F.3d 279, 288 (1st Cir.1997); *United States v. Fisher*, 929 F.Supp. 26, 28 (D.Me.1996) (suspect's flight upon officer's approach among factors contributing to probable cause to arrest); *Evans v. Avery*, 1995 WL 170056, *4 (D.Mass. Mar.14, 1995) (same), *rev'd* on other grounds, 100 F.3d 1033 (1st Cir. 1996). Plaintiff acknowledged as much at oral argument, but complains that the probable cause for his arrest only arose out of Gatchell's unlawful decision to pursue him in the first place. Pl.Mem. at 2. He suggests that the appropriate point in time to examine Gatchell's actions is when Gatchell first decided to stop Plaintiff. This argument, however, is flawed.

█ Plaintiff's Fourth Amendment interest in freedom from unreasonable sei-

---

4. G.L. c. 90 § 25 provides, in pertinent part, that "Any person who, while operating or in charge of a motor vehicle, ... shall refuse or neglect to stop when signaled to stop by any police officer who is in uniform or who displays a badge conspicuously ... shall be punished by a fine of one hundred dollars."

zure did not attach until the moment of his arrest. *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (no seizure occurs where a suspect does not yield to a police show of authority); *United States v. Brown*, 169 F.3d 89, 91 (1st Cir.1999) (same); *United States v. Sealey*, 30 F.3d 7, 9 (1st Cir.1994). The First Circuit has thus made clear that whether there is probable cause for an arrest depends on what an arresting officer knows or reasonably believes at the moment of arrest. *See Brown*, 169 F.3d 89, 91 (1st Cir.1999); *United States v. Bizier*, 111 F.3d 214, 216 (1st Cir.1997). At that moment, Gatchell had personally seen Plaintiff flee, which is a crime, at least where Gatchell was not using excessive force to effect the arrest. *Commonwealth v. Moreira*, 388 Mass. 596, 447 N.E.2d 1224, 1227 (1983) ("If a police officer is making an illegal arrest, but without excessive force, the remedy is to be found in the courts."); G.L. c. 268 § 32B(b) (West 1995) (enacting same). Gatchell also reasonably believed, in reliance on the apparently trustworthy (although mistaken) information Bolduc had given him, that Plaintiff had violated the abuse prevention order, a second crime. Thus, as to both grounds for arrest, Gatchell had probable cause.

█ Furthermore, even assuming for the purposes of argument that probable cause to arrest for either offense was somehow lacking, it is clear that Gatchell's decision to pursue Plaintiff was supported by a reasonable and articulable suspicion of criminal activity. Gatchell knew that a restraining order was in effect against Plaintiff. Bolduc had told Gatchell that the terms of the order required Plaintiff to remain 300 yards away from the Maple Dell Lane residence. Gatchell had no reason to question the reliability of this information supplied by a fellow police officer. Plaintiff was less than 300 yards away from the Maple Dell Lane residence. On this set of facts, no reasonable juror could conclude that it was unlawful for Gatchell to stop Plaintiff momentarily to confirm or dispel his suspicion that Gatchell was in violation of the order.[5]

For all the foregoing reasons, summary judgment should be entered against Plaintiff on his claim for false arrest.

### B. Malicious Prosecution

In Count II of his complaint, Plaintiff alleges that "Defendants maliciously prosecuted Plaintiff." *Complaint* at ¶ 25.[6] Although Defendants requested in their memorandum that summary judgment enter on "each" of Plaintiff's claims, they did not specifically address the malicious prosecution claim. One might have expected Plaintiff to note this omission in his opposition, but, inexplicably, his memorandum was also silent with respect to malicious prosecution. When the parties were alerted to these oversights at oral argument, Defendants suggested that even if Plaintiff had originally intended to assert a claim for malicious prosecution, he waived such

---

5. Plaintiff conceded at oral argument and in his opposition that Gatchell would have been justified in detaining him briefly for this purpose when the officer first saw him on Maple Dell Lane. Pl.Mem. at 5. This alone is dispositive, because the constitutionality of the *Terry* stop does not turn on whether it was made immediately upon Gatchell's observation of Plaintiff's van in the vicinity of the residence, or a few moments later, after Plaintiff had begun to drive away. Even if Plaintiff had not made this concession, however, I would still find that Gatchell was justified in pursuing Plaintiff based on the information he had at his disposal.

6. Although the Supreme Court and the First Circuit have not expressly recognized a section 1983 claim for malicious prosecution, both courts have left open the possibility that such a claim might lie under section 1983 on the basis of the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion); *Meehan*, 167 F.3d at 88; *Calero–Colon v. Betancourt–Lebron*, 68 F.3d 1, 3–4 (1st Cir. 1995). For the purposes of this motion, I will assume that malicious prosecution is actionable under section 1983.

claim by failing to conduct discovery on it and by conceding at his deposition there was no basis for it. *See* Pl.Dep. at 169:7–170:15 ("I'm not aware of any conspiracy to prosecute myself. ..."). Defendants further noted at oral argument, without opposition, that the only damages Plaintiff was seeking arose out of his arrest and subsequent hospitalization and not from any alleged malicious prosecution.

To avoid any element of unfair surprise based upon Defendants' new arguments, I entered an order following oral argument giving Plaintiff an additional 10 days to designate facts in the evidentiary record supporting his malicious prosecution claim. *Order,* Docket No. 53. Plaintiff did not avail himself of this opportunity. Reading the summary judgment record in the light most favorable to Plaintiff, the most that can be said is that Plaintiff was well known to the Holliston police as someone who opposed the abuse prevention laws and police enforcement of them. Pl.Dep. at 84–91. Even if that is the case, Plaintiff has not overcome his own statement that he had no dispute with the individual defendants other than with their wrongful decision to arrest him. Pl.Dep. at 169:7–170:15. For this reason, I recommend that summary judgment enter with respect to the malicious prosecution claim.

■ Even if I were to conclude that Plaintiff was continuing to press his claim for malicious prosecution, I would still recommend that summary judgment enter on behalf of the individual defendants. To establish a claim for malicious prosecution, Plaintiff must show that "criminal proceedings were initiated against him without probable cause and for an improper purpose and were terminated in his favor." *Meehan,* 167 F.3d at 88–89 (citing *Landrigan v. City of Warwick,* 628 F.2d 736, 745 n. 6 (1st Cir.1980)). As for Bolduc, Plaintiff conceded at oral argument that there is no basis in the record to conclude that

Bolduc signed the application for a criminal complaint or the complaint itself or that Bolduc even knew that Gatchell had initiated proceedings against Plaintiff. A fortiori, there is no evidence that Bolduc prosecuted Plaintiff or that he did so for an improper purpose. Bolduc is therefore entitled to summary judgment on this claim.

■ Gatchell did initiate criminal proceedings against Plaintiff that ultimately terminated in Plaintiff's favor, but there could be no claim for malicious prosecution absent an improper purpose and a lack of probable cause to make the charge. I have already determined that Gatchell had probable cause to arrest Plaintiff for violation of the abuse prevention order based on the information Gatchell possessed at the moment of arrest. Thus, the only way that Gatchell could have acted without probable cause with respect to the decision to charge Plaintiff is if at some point after the arrest, but prior to signing the criminal complaint, he learned that Bolduc had misstated the terms of the abuse prevention order.[7] This scenario, however, is pure speculation, as Plaintiff cannot identify any evidence in the summary judgment record that Gatchell had received any information at any time that would have alerted him to the fact that Bolduc had erroneously reported the terms of the abuse prevention order. Therefore, even assuming that Plaintiff has not waived his malicious prosecution claim, Defendants are still entitled to summary judgment.

### C. Defendant Town of Holliston—Municipal Liability

■ There are a number of serious problems with Plaintiff's claim of municipal liability. Most significant among them is that Plaintiff has failed as a matter of law to show that either Bolduc or Gatchell deprived him of a constitutionally

---

7. Arguably, instituting the charge with that new knowledge would also constitute evidence of an improper purpose.

protected interest. Even if, as Plaintiff alleges, the Town of Holliston had a custom of inadequately and improperly investigating abuse prevention orders, or of enforcing those orders in a discriminatory manner, Plaintiff cannot show that such a policy caused him constitutional harm where his arrest was supported by probable cause. *See, e.g., Hayden v. Grayson,* 134 F.3d 449, 456 (1st Cir.) (where claim that individual defendant violated plaintiffs' constitutional rights fails, "so must their contention that any ... discriminatory town policy or custom existed"), *cert. denied,* — U.S. ——, 118 S.Ct. 2370, 141 L.Ed.2d 738 (1998); *Holland v. City of Portland,* 102 F.3d 6, 11–12 (1st Cir.1996) (municipal liability claim dismissed where arrest supported by probable cause); *Burns v. Loranger,* 907 F.2d 233, 239 (1st Cir.1990) (section 1983 claim against municipality dismissed where no constitutional injury to plaintiff proven). Because Plaintiff has failed to prove any Fourth Amendment deprivation, he cannot base a claim of municipal liability on that alleged deprivation.

### D. Count III—Intentional Infliction of Emotional Distress

With the dismissal of Plaintiff's three claims under section 1983, the federal jurisdictional hook upon which Plaintiff attempted to hang his state law claim is no longer available to him. This creates an opportunity for an informed exercise of the court's discretion about whether to retain jurisdiction. 28 U.S.C. § 1367(c); *see Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 256–57 (1st Cir.1996); *Roche v. Town of Wareham,* 24 F.Supp.2d 146, 154 (D.Mass.1998). In the ordinary run of cases, dismissal of state claims with no independent jurisdictional basis is the norm. Where it is clear, however, that Plaintiff's state law claim would fail before the Massachusetts courts, judicial economy is well served by disposing of the claim on its merits. Such is the case here.

To establish a claim for intentional infliction of emotion distress under Massachusetts law, Plaintiff must prove that: (1) Gatchell and/or Bolduc intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of their conduct; (2) their conduct was "extreme and outrageous," "beyond all bounds of decency," and was "utterly intolerable in a civilized community"; (3) their actions caused Plaintiff's distress; and that (4) the emotional distress Plaintiff sustained was "severe" and of a nature "that no reasonable man could be expected to endure it." *Agis v. Howard Johnson Co.,* 371 Mass. 140, 355 N.E.2d 315, 319 (1976).

To state the standard here is to answer the question. Police officers do not act in an extreme, outrageous, and intolerable manner when they make an arrest based upon probable cause, and the distress that invariably accompanies an arrest, while it can be quite severe, is not beyond the limits of what a reasonable person can be expected to endure. As this court stated in *Finucane v. Town of Belchertown:*

> It is reasonable to conclude that, for most people, arrest is a traumatic experience, especially if the charges later prove to be false. However, this factor alone does not give rise to a claim for intentional infliction of emotional distress—especially where as here, the court has held that the plaintiff's arrest was supported by probable cause. While the plaintiff's experience was undoubtedly highly unpleasant, the facts of this case simply do not support a claim for intentional infliction of emotional distress.

808 F.Supp. at 911 (Ponsor, J.); *see also Dean v. City of Worcester,* 924 F.2d 364, 366, 369 (1st Cir.1991) (police officers' mistaken arrest of plaintiff, who suffered physical injuries and alleged severe emotional trauma as a result, was not "extreme and outrageous" conduct because officers' conduct was "objectively reason-

able [under] the circumstances"). For the same reasons, I recommend that Count III be dismissed with prejudice.

### E. G.L. c. 209A

In his opposition to Defendants' motion for summary judgment, Plaintiff complains passionately that Massachusetts' abuse prevention laws are unconstitutional on their face and as applied to him where abuse prevention orders are routinely obtained "*ex parte,* with no notice and no opportunity to be heard." Pl.Mem. at 8. He further asserts that "the entire 209A policy scheme should be condemned, and thrown out as unconstitutional." *Id.* Putting aside the problem that Plaintiff never asserted this claim in his complaint, Gatchell, Bolduc and the Town are clearly not the proper defendants and this is not the proper forum for such a claim. Plaintiff could and should have raised it as a defense to the renewal of the restraining order at the further hearing held in Framingham District Court on March 8, 1994— a hearing of which Plaintiff did have notice.

### V. Conclusion

For all of the reasons set forth above, I recommend that Defendants' motion for summary judgment be GRANTED as to all of Plaintiff's claims. All counts being dismissed, judgment should enter for Defendants.

### VI. IMPORTANT NOTICE OF RIGHT TO OBJECT AND WAIVER OF RIGHT TO APPEAL FOR FAILURE TO DO SO WITHIN TEN DAYS

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court WITHIN 10 DAYS of the party's receipt of this Report

and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court's order entered pursuant to this Report and Recommendation. *See United States v. Valencia–Copete,* 792 F.2d 4, 5–6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980); *see also Thomas v. Arn,* 474 U.S. 140, 148–149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).