Ronald DAVIS, Plaintiff,

v.

Frank SCHIFONE, Defendant.

No. CIV.A. 98–10962–JLT.

United States District Court,
D. Massachusetts.

Feb. 6, 2002.

Harvey A. Schwartz, Rodgers, Powers & Schwartz, Boston, MA, for Ronald L. Davis, Plaintiffs.

Joseph P. Kittredge, Law Offices of Timothy M. Burke, Needham, MA, for Frank Schifone, Defendants.

## MEMORANDUM

TAURO, District Judge.

Plaintiff Ronald Davis, a Massachusetts resident, brings this civil rights action against Defendant Frank Schifone, a Massachusetts State Police Officer. Plaintiff sues Defendant individually and in his official capacity for damages resulting from an allegedly wrongful arrest. Defendant counterclaims for intentional infliction of emotional distress.

At issue is Defendant's motion for summary judgment.

## BACKGROUND

In the predawn hours of September 12, 1995, Plaintiff was driving along Route 93 in Boston, Massachusetts, having spent the evening viewing movies and dining at a restaurant in Chinatown.[1] At approximately 2:00 a.m., Defendant Officer Schifone entered the highway behind Plaintiff and requested him to pull over to the side of the road.[2] After Plaintiff came to a stop, Defendant exited his police cruiser, approached Plaintiff's vehicle, requested Plaintiff's wallet, and returned to the cruiser.[3] According to Plaintiff, the wallet contained $1,900 in cash.[4]

After twenty to thirty minutes, Defendant returned to Plaintiff's vehicle and placed him under arrest for driving under the influence of alcohol, failing to stay within the marked lines of the highway, and failing to stop for a police officer.[5]

1. *See* Davis Dep. 66–76 (attached as Ex. A to Def.'s Mot. for Summ. J.).

2. *See* Compl. ¶ 6; Def.'s Supplemental Br. in Supp. of Mot. for Summ. J. ("Def.'s Supp.'l Br.") Ex. A.

3. Compl. ¶ 7.

4. *Id.*

5. Compl. ¶ 8. *See* Def.'s Supp.'l Br. Ex. A.

Plaintiff was then instructed to perform a series of roadside sobriety tests, including walking in a straight line and reciting the alphabet.[6]  Defendant determined that Plaintiff failed the tests, and refused Plaintiff's requests for a blood alcohol test.[7]

Defendant subsequently searched Plaintiff's vehicle and removed a blue money pouch containing approximately $200 and receipts belonging to the residents of a group home managed by Plaintiff.[8]  Plaintiff was taken to the South Boston State Police station, and his car was towed away.  Once at the police station, Plaintiff again requested a Breathalyzer test, and Defendant again refused.  Defendant then placed $1,092 in front of Plaintiff, and requested Plaintiff to verify the amount.[9]  Plaintiff informed Defendant that his wallet had contained approximately $1,900 before the incident.[10]  After arguing with Defendant over the amount of money, Plaintiff was detained overnight.[11]

At Plaintiff's arraignment in the Dorchester District Court the next morning, Plaintiff was given a "Statutory Rights and Consent Form," which included a section requesting Plaintiff to consent to a blood alcohol test.  The form was marked with a "no" response, and was allegedly signed by Plaintiff.  Plaintiff denies signing the form, and indeed insists that a handwriting expert concluded that Plaintiff's signature was forged by Defendant.  Plaintiff was released from custody and given the $1,092 in cash, but did not receive any additional cash or the blue money pouch.[12]

According to Plaintiff, the Internal Affairs Office of the Massachusetts State Police conducted an investigation into the matter, and later found a blue money bag containing $166.65 and six bank books in the names of the residents of the group home in Defendant's personal locker.[13]

In December 1995, a jury in West Roxbury District Court found Plaintiff guilty of operating a motor vehicle under the influence of alcohol and not guilty of failing to stop for an officer.  Plaintiff was sentenced to six months in the house of correction, suspended for two years, and was ordered to attend alcohol counseling.[14]  Because Plaintiff was unable to pursue an appeal, the appeal was dismissed.[15]

Plaintiff filed suit in this court against Defendant individually and in his official capacity, alleging violations of 42 U.S.C. § 1983 (Count I) and the Massachusetts Civil Rights Act (Count II), and conversion (Count III).  Plaintiff seeks compensatory and punitive damages.

## DISCUSSION

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

6. Compl. ¶ 8. *See* Davis Dep. 113–115.

7. *Id.*

8. Compl. ¶¶ 6, 9.

9. Compl. ¶ 10–12.

10. *Id.*

11. Compl. ¶ 14.

12. Compl. ¶¶ 14–16.

13. Compl. ¶ 17–20.

14. Compl. ¶ 21; Def.'s Supp.'l Br. Ex. B.

15. *See* Pl.'s January 13, 2002 Letter to the Ct. ("Pl.'s 1/13/02 Letter") 1; Def.'s Supp.'l Br. Ex. B at 2.

law."[16] Rule 56 mandates summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[17]

Defendant seeks summary judgment on Count I, which the Plaintiff broadly entitled "Wrongful Arrest." But Count I actually alleges two distinct § 1983 violations: wrongful arrest and wrongful deprivation of property. This court will address the two allegations separately.

### A. Wrongful Arrest

Plaintiff argues that his arrest was "unjustified and without probable cause," in violation of § 1983. In support of this argument, Plaintiff alleges that he had not been drinking, that he passed all field sobriety tests, and that Defendant refused to administer a blood alcohol or Breathalyzer test, despite Plaintiff's repeated requests.

Because of the brevity of Defendant's argument in his Memorandum in Support of his Motion for Summary Judgment, and because Plaintiff Davis is currently proceeding pro se, this court issued an Order on December 11, 2001,[18] instructing the Parties to submit supplemental briefs addressing: (1) whether a Magistrate or other Massachusetts judicial officer made an initial appearance determination as to the existence of probable cause, (2) whether the issues of probable cause, wrongful arrest, and deprivation of property were actually litigated in West Roxbury District Court, (3) whether collateral estoppel provides a bar to any of Plaintiff's claims, and (4) whether Plaintiff's suit, if successful, would necessarily imply the invalidity of Plaintiff's O.U.I. conviction, in violation of *Heck v. Humphrey*.[19]

In his supplemental brief, Defendant claims that Plaintiff was arraigned before Judge Hanlon in Dorchester District Court on September 11, 1995. Attached as Exhibit B to Defendant's supplemental brief is a copy of a certified docket from *Commonwealth v. Davis*, Dorchester District Court No. 9507–CR–6646, which supports this claim.

Defendant further argues that, because Plaintiff was convicted by a jury on the charge of operating under the influence of liquor, the issue of probable cause was necessarily decided.[20] While Defendant concedes that "[i]t is unclear to what extent Davis actually litigated the issues of probable cause or wrongful arrest in the Commonwealth's prosecution of him in the West Roxbury District Court," Defendant insists that Davis's conviction of operating under the influence is now final, and Davis has thus "waived his right to bring these issues up on appeal, or further removed, in a subsequent civil action against the arresting officer."[21]

Plaintiff submitted two letters to the court in response to the December 11, 2001 Order. While neither letter refers to Plaintiff's initial arraignment, Plaintiff does discuss his trial. In the January 20, 2002 letter, Plaintiff states that he "most certainly raised the issue of probable cause or false arrest at trial."[22] It is doubtful,

---

**16.** Fed.R.Civ.P. 56(c).

**17.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**18.** *See* Docket # 38.

**19.** 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

**20.** *See* Def.'s Supp.'l Br. 2.

**21.** *Id.*

**22.** Pl.'s January 20, 2002 Letter to the Ct. ("Pl.'s 1/20/02 Letter") at 1.

however, that Plaintiff adequately understands the concept of probable cause, given his argument in the January 13, 2002 letter that "[p]robable cause amply exists in this case."[23] Despite this court's repeated encouragement since May 2001 to obtain legal representation, Plaintiff has been unable to do so.

Defendant argues that Davis's complaint cannot survive the favorable termination requirement set forth by the Supreme Court in *Heck*, and is in any event barred by the doctrine of collateral estoppel. While the Defendant's brief conflates the two, favorable termination and collateral estoppel are distinct, albeit related, concepts.

### 1. *Heck v. Humphrey*

■ In *Heck*, the issue was whether a state prisoner was permitted to challenge the constitutionality of his conviction through the vehicle of § 1983. After noting "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments,"[24] the Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on

direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.[25]

According to the *Heck* majority, a district court judge must first determine whether a successful § 1983 claim "would necessarily imply the invalidity" of the plaintiff's underlying conviction or sentence.[26] If so, the suit is impermissible.

Having invoked the spectre of *Heck*, Defendant urges the court to allow its motion for summary judgment. Because Davis previously litigated the issue of probable cause in state court, and because Davis did not appeal his conviction for operating a vehicle under the influence of alcohol, he may not now, Defendant maintains, challenge his conviction.

Defendant is correct. While the contours of the Court's decision in *Heck* may have caused disagreement in the lower courts, the First Circuit has adopted a strict interpretation. Many lower courts, for example, would not extend the requirements of *Heck* to individuals who, like Plaintiff, are not in custody, whether because their sentence has expired or their punishment did not include incarceration.[27] After the Supreme Court's decision in *Spencer v. Kemna*,[28] five current Justices have expressed support for this view.[29]

---

23. Pl.'s 1/13/02 Letter at 1.

24. *Heck*, 512 U.S. at 486, 114 S.Ct. 2364.

25. *Id.*

26. *Id.* at 487, 114 S.Ct. 2364.

27. *See, e.g., Jenkins v. Haubert*, 179 F.3d 19, 27 (2d Cir.1999) (asserting that the "new majority position" on the Supreme Court exempts such individuals from the requirements of *Heck* ).

28. 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998).

29. *See Jenkins*, 179 F.3d at 27 (noting that barring individuals for whom habeas relief is not available from bringing § 1983 suits attacking prior convictions "would contravene the pronouncement of five justices that some federal remedy-either habeas corpus or § 1983–must be available"); *DeWalt v. Carter*, 224 F.3d 607, 616 (7th Cir.2000) (quoting *Jenkins* ). *But see Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir.2000) ("[W]e decline to

The First Circuit, however, has refused to adopt this rationale.

In *Figueroa v. Rivera*,[30] the First Circuit addressed a § 1983 claim brought on behalf of an inmate who passed away while pursuing a habeas petition. It would be unfair, the Plaintiff–Appellants argued, to bar a § 1983 suit from proceeding, because habeas relief was clearly unavailable to a deceased inmate. While the First Circuit conceded that the petition "strikes a responsive chord," it concluded that such a suit "runs afoul of *Heck*'s core holding."[31] The *Figueroa* court noted that several current Supreme Court justices have expressed doubt, in dicta, as to the applicability of *Heck* to individuals not currently incarcerated.[32] But the court refused to follow the lead of other circuits, choosing instead to "leave to the [Supreme] Court 'the prerogative of overruling its own decisions.'"[33] Under *Heck*, "the principle barring collateral attacks ... is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated."[34] Plaintiff Davis is therefore subject to the favorable termination requirement of *Heck*.

Plaintiff's wrongful arrest claim, if successful, would necessarily imply the invalidity of his conviction for operating under the influence. Davis was arrested for failing to stay between the marked lines of a highway, and any evidence regarding probable cause would have come from Defendant Schifone alone. As previously stated by this court, "because there was only a single incident, Plaintiff, in order to prevail on his section 1983 false arrest claim, would have to prove that [the arresting officer] did not have probable cause to arrest him for *any* reason. But proof that there was no probable cause to arrest for any reason necessarily implies the invalidity of the conviction."[35] Plaintiff's wrongful arrest claim is therefore barred by *Heck*.

### 2. Collateral Estoppel

■ Defendant argues that, in addition to being barred by *Heck*, Plaintiff is collaterally estopped from relitigating the issue of probable cause.[36] Defendant also contends, and Plaintiff admits, that Plaintiff's appeal was dismissed on January 3, 1997, thus rendering the conviction final as a matter of law.[37]

■ Defendant is correct that the doctrine of collateral estoppel applies to § 1983 suits. Federal courts must give the same amount of preclusive effect to a state court judgment as would state courts sitting in the jurisdiction in which the

announce for the Supreme Court that it has overruled one of its decisions.").

**30.** 147 F.3d 77 (1st Cir.1998).

**31.** *Id.* at 81.

**32.** *See id.* at n. 3.

**33.** *Id.*(quoting *Agostini v. Felton*, 521 U.S. 203, 207, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)).

**34.** *Heck*, 512 U.S. at 490 n. 10, 114 S.Ct. 2364.

**35.** *Sholley v. Town of Holliston*, 49 F.Supp.2d 14, 18 (D.Mass.1999). *But see Lang v. City of Round Lake Park*, 87 F.Supp.2d 836, 844 (N.D.Ill.2000) (noting that the Seventh Circuit "has repeatedly concluded that a person may maintain a false arrest claim even if he was ultimately convicted of the offense and even if the conviction still stands," because "'an illegal search or arrest may be followed by a valid conviction'") (citations omitted).

**36.** *See* Def.'s Mem. in Supp. of Mot. for Summ. J. 5.

**37.** *See* Def.'s Supplemental Br. in Supp. of Mot. for Summ. J. 3; Pl.'s 1/20/02 Letter at 1.

judgment was rendered,[38] and "Massachusetts courts apply the general rule of issue preclusion as set forth in the Restatement (Second) of Judgments (1982)."[39] In Massachusetts, "a party to a civil action against a former criminal defendant may invoke the doctrine of collateral estoppel to preclude the criminal defendant from relitigating an issue decided in the criminal prosecution."[40] In general, "issue preclusion (or collateral estoppel) is appropriate where there is 'an identity of issues, a finding adverse to the party against whom it is being asserted, and a judgment by a court or tribunal of competent jurisdiction.' "[41]

In the present action, there is sufficient evidence that Plaintiff had a "full and fair opportunity" to raise the issue of probable cause at his criminal trial. As was the case in *Kyricopoulos*, the grounds upon which Davis apparently based his defense in his state trial—that he was sober, that he was not swerving, and that he requested a Breathalyzer—are the same grounds upon which he bases his current § 1983 wrongful arrest claim. The state court judgment is a valid and final judgment and the conduct of the arresting officer is at issue. Plaintiff is therefore barred from relitigating the question of probable cause.

### B. Deprivation of Property

■ In his Memorandum in Support of Summary Judgment, Defendant argues that Count I alleges only wrongful arrest. Construing the Complaint in the light most favorable to Plaintiff, however, this court interprets Count I as also alleging deprivation of property without due process of law, in violation of the Fourteenth Amendment. Because this claim would not necessarily imply the invalidity of the underlying O.U.I. conviction—Davis could be guilty of the O.U.I. and yet still have his money stolen—*Heck* does not foreclose the due process claim.

But, unfortunately for Plaintiff, this is not the end of the matter. Because Plaintiff has not alleged the sort of property/liberty interest to which substantive due process attaches,[42] this court interprets Count I as alleging only violation of procedural due process.

■ In order for Plaintiff to succeed on a procedural due process claim under § 1983, he "must allege first that [he] has a property interest as defined by state law and, second, that the defendant[ ], acting under color of state law, deprived [him] of that property interest without constitutionally adequate process."[43]

■ Plaintiff alleges that Defendant Schifone, having exerted the power of the State of Massachusetts to force Davis to the side of the road, proceeded to commandeer Plaintiff's cash. Plaintiff has thus satisfied the first requirement of a procedural due process claim.

---

38. *See* 28 U.S.C. § 1738.

39. *Cinelli v. City of Revere*, 820 F.2d 474, 479 (1st Cir.1987).

40. *Aetna Casualty & Surety Co. v. Niziolek*, 395 Mass. 737, 481 N.E.2d 1356, 1360 (1985).

41. *Kyricopoulos v. Town of Orleans*, 967 F.2d 14, 16 (1st Cir.1992).

42. *See Coyne v. City of Somerville*, 770 F.Supp. 740, 747 (D.Mass.1991) (Tauro, J.) (noting that "[n]ot every property interest is entitled to the protection of *substantive* due process," and that "[f]undamental interests, protected by substantive due process, have been found in such restrictive areas as marriage, procreation, and family life").

43. *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 30 (1st Cir.1991)(citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)).

The second requirement, however, is more problematic. Plaintiff cannot successfully argue that the State should have provided him with a full hearing before Defendant allegedly stole his money. The crux of his claim, in fact, is that Schifone's act was intentional and unauthorized. Any predeprivation process was therefore impracticable.

 According to well established doctrine, intentional deprivations of property do not violate the Due Process Clause "provided, of course, that adequate state postdeprivation remedies are available."[44] In *Hudson v. Palmer*, the Court held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy."[45]

Because the Massachusetts state tort of conversion[46] and common-law remedies are suitable postdeprivation remedies for the alleged conversion of Plaintiff's property, Defendant's alleged conduct—even if true—did not violate the Fourteenth Amendment.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is ALLOWED as to Count I. Having dismissed the Plaintiff's only federal claim, this court declines to exercise pendant jurisdiction over the Plaintiff's remaining state law claims and Defendant's counterclaim. The state law claims are therefore DISMISSED.[47]

---

**44.** *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

**45.** *Id.*

**46.** *See Abington Nat. Bank v. Ashwood Homes, Inc.*, 19 Mass.App.Ct. 503, 475 N.E.2d 1230, 1233 (1985).

**47.** *See* Fed.R.Civ.P. 12(b)(1).